## ALEX LOUNDER v. THE STATE.

### No. 2951. Decided March 9, 1904.

**1.—Evidence—Offer to Bribe.**

Where testimony is offered to show that a third party offered to bribe a State's witness, it must first be shown that the attempt to bribe was authorized by the defendant.

**2.—Same—Withdrawal of Illegal Testimony.**

Where it was not shown that an attempt to bribe a State's witness was authorized by the defendant, and the court instructed the jury not to consider it, such withdrawal eliminated any prejudice that may have arisen, in view of the record showing circumstantially a most cruel and wanton assassination.

**3.—Same—Witness May Be Corroborated.**

Where the defense contradicts a State's witness, it is proper for the State to show that the said witness made similar statements, shortly after the transaction—although defendant was not present—to those that the witness made on the stand, in order to corroborate the witness.

**4.—Charge of the Court—Lower Grade of Murder.**

Even where the evidence shows that the defendant, if guilty, could be guilty only of murder in the first degree, it is not such error of which defendant, in the event he is convicted of murder in the second degree, can complain that the court charged on such lower grade of murder.

**5.—Defendant as Witness.**

There was no error in the court's charge that a defendant in a criminal action shall be permitted to testify in his own behalf therein, but the failure of any defendant to so testify shall not be taken as a circumstance "against," leaving out the word "him," and to instruct the jury that they must not discuss such circumstance in their retirement.

**6.—Jury and Jury Law—Court's Discretion.**

Where in a motion for new trial, the fact of a juror's impartiality is challenged, and the testimony is conflicting as to the issue raised, the court's decision thereon will not be disturbed in the absence of a showing of an abuse of the court's discretion.

**7.—Same—Temporary and Partial Separation.**

Where the jury separated and ate at different tables in different rooms, but in view of each other, and under the charge of an officer; and where on another occasion, one of the jurors went to look after his horse. in charge of an officer, and in view of his fellows, there was no such separation as the law inhibits.

Appeal from the District Court of Waller. Tried below before Hon. Wells Thompson.

Appeal from a conviction of murder in the second degree; penalty, ten years imprisonment in the penitentiary.

The testimony in the case is wholly circumstantial. On the day deceased was supposed to have been killed, he and defendant were seen together quarreling. It seems defendant was inside of his field and the deceased just outside, driving a cow and charging defendant with injuring his cattle or live stock, threatening to report him to the authorities. Defendant denied molesting his stock and called upon deceased to stop and settle their difficulty; deceased retorted and said he was not armed, but that defendant better not attack him; that if he did he would disturb a "hot horse." Both were horseback, or rode mules. About this time of their quarrel the witnesses who heard this coloquy passed on

along the road, but saw that the deceased would not stop, but kept on. going his way into the woods; the defendant, however, had dismounted and was climbing through a wire fence with a gun in his hand going in the direction where deceased had gone, and shortly after, both deceased and defendant being out of sight of the witnesses, the latter heard a shot in the direction of the place where deceased had gone. The country at the scene where this took place and where deceased's body was found, a few days after, in a state of decomposition, was very brushy. The deceased had been killed evidently by one gunshot wound which took effect in his right breast. There was some evidence as to former threats and ill feeling on part of the defendant towards deceased. The defense set up an alibi. This statement, together with the facts as stated in the opinion, sufficiently presents the case.

*Hannay & Brown* and *W. Pool,* for appellant.—On question of bribery: Luttrel v. State, 51 S. W. Rep., 930. On question of illegal testimony by witness Heard: Gonzales v. State, 16 Texas Crim. App., 152; Favors v. State, 20 Texas Crim. App., 155. On omission of word in court's charge: Picket v. State, 12 Texas Crim. App., 86.

*Howard Martin,* Assistant Attorney-General, for the State.—On admission of Ida Yancy's testimony: Williams v. State, 24 Texas Crim. App., 637; Goode v. State, 32 Texas Crim. Rep., 505; Sentell v. State,. 34 Texas Crim. Rep., 260; Campbell v. State, 35 Texas Crim. App., 160.

BROOKS, Judge.—Appellant was convicted of murder in the second degree, and his punishment assessed at confinement in the penitentiary for a term of ten years.

Appellant complains that the witness Dina Wood was asked by State's. attorney if she had had a conversation with Lower Montgomery, and if in such conversation Lower Montgomery tried to bribe her to testify in behalf of defendant. Before objection could be made, witness answered "yes." Appellant's counsel immediately objected to the question and answer. The court overrruled the objections and permitted the witness to state: "Lower Montgomery came to me and asked me to change my evidence, and asked me if anyone had talked to me about the case. I told him yes, that Mr. McDade, the county attorney, had talked to me about the case, and I had told him what my evidence would be. Lower Montgomery said he was sorry, that if he could have seen me first and I would have testified for defendant I should never want for bread or meat as long as he had a crust in the house or a dollar to buy it with." This statement was made in the presence of the jury; and after the statement was so made, the court told the jury to disregard it. Appellant objected, because such statement, if made, was not in the presence of defendant, and without his knowledge; because the court should have had the jury retired before permitting the witness

to answer; because the defendant was prejudiced notwithstanding the court's instruction to disregard the same. The court appends this explanation to the bill: "It had been shown that Lower Montgomery was an active partisan for the defendant, that he had indirectly approached several of the jurors in behalf of defendant before they had been impaneled, and it was communicated to the court by the district attorney that he would show by this witness that Montgomery had offered her a bribe to change her testimony. And the court allowed the district attorney to ask the question, and the witness to make the answer complained of in this bill. The answer of witness was not as strong as stated in this bill, not direct enough to show the offer of a bribe. If it had the court would not have excluded it from the jury; her answer was so immaterial on the bribe question that the court excluded it from the jury. Lower Montgomery was an active agent and partisan of the defendant, and the court would have been justified in letting go to the jury any and all unlawful acts on his part in behalf of the defendant to influence jurors and witnesses." A similar question was before this court in Luttrell v. State, 51 S. W. Rep., 931. There it appeared that the State was permitted to prove that the attorney for defendant attempted to bribe a witness for the State to leave the country. Defendant objected because hearsay; calculated to unduly prejudice the jury against defendant, etc. The objections were overruled, and the court in approving the bill stated that is was shown Arnold at the time was Luttrell's attorney, and was acting as such in the transaction. In that case this court held that if appellant was shown to have been connected with, or had authorized the action of Arnold, his attorney, said testimony would have been admissible; but aside from the fact that he was attorney for Luttrell, the record showed nothing tending to show he was authorized by appellant to bribe or offer to bribe said witness. In cases of this character there must be either positive or circumstantial evidence reasonably conclusive, showing that the party who offers the bribe was authorized by defendant to make the offer; otherwise the testimony as to such defendant is purely hearsay. And see Parks v. State, just decided. The bill of exceptions here does not show whether or not Montgomery was authorized by appellant to bribe the witness, or attempt to bribe her. The court says in his explanation if the attempt had been consummated, or if the bribe had been given by Montgomery, he would have permitted the testimony to remain with the jury. This would have been clearly erroneous. Where a party attempts to bribe a witness, before defendant could be bound by such act, it must be shown that defendant authorized it. It follows, therefore, that the court erred in admitting this testimony. The question now arises as to whether or not, having excluded said testimony from the consideration of the jury, the action of the court in admitting the same was of such a character that the prejudice arising by virtue of its introduction could not be eliminated by withdrawing it

from the jury. We answer this question in the affirmative. We do not think appellant's rights, in view of this record, were so prejudiced by said testimony as authorizes a reversal. The record shows circumstantially an assassination; or at least a killing in the most cruel and wanton manner, without any apparent cause or excuse. In view of this evidence, the admission of this testimony and subsequent withdrawal of the same from the jury, in our opinion, is not such error as necessitates a reversal.

By the second bill appellant complains that Ida Yancy, State's witness, testified that about 1 o'clock on Friday, August 21, 1903, while she and Richard Butler were going fishing, she passed defendant and deceased near defendant's fence; that defendant and deceased were fussing; that defendant was armed with a gun; that deceased rode away. Defendant, who was on a mule, got down, crawled through the wire fence, and followed deceased, who was riding a bay horse. Defendant said to deceased, "Stop, and let us settle the matter now." That a short time thereafter she heard a shot in the direction deceased and defendant had gone. After the State had rested and defendant had concluded, the district attorney called Will Heard to the witness stand, and asked him to state what witness Ida Yancy said to him on Monday, August 24, 1903, about seeing deceased and defendant fussing on Friday before. To which defendant objected, which objections were overruled, and witness stated: "While at the dead body of Wils Joshua, on Monday, August 24, Ida Yancy told me that on Friday before she and Richard Butler were going fishing, that when they reached a point near a bunch of bushes on the west line of defendant's field fence defendant was on a mule inside of his field; deceased on his horse outside of the field; that she and Richard Butler passed between defendant and deceased; that defendant and deceased were fussing; that deceased rode away from defendant, going west. Defendant got off his mule, tied him to a bush, crawled through the wire fence, and followed after deceased, saying 'Stop, and let us settle now.' That defendant had a gun. That after she had gone some distance she heard a shot in the direction where the dead body was found; that defendant was not present when the statement was made." The objections of appellant being that it was hearsay; defendant was not present; was not res gestae, the offense having been alleged to have been committed on August 21st, and this conversation occurred three days thereafter. The court qualifies the bill with the following: "Witness Ida Yancy is a negro woman, and was the chief witness for the State. Defendant's attorney tried to contradict her testimony; and the testimony of witness Heard was admitted by the court to corroborate her, and show that on Monday, when the dead body was first found, she, Ida Yancy, gave then and there the same account of the murder that she gave on this trial." With this explanation of the court there was no error in the ruling of the court here complained off. Where the defense contradicts a witness, it is proper for the State to show that she made similar statements presently after

the transaction to that then being testified, in order to corroborate her evidence.

Appellant's third bill complains that the court erred in charging on murder in the second degree, since the evidence shows that if defendant was guilty, he was guilty of murder by express malice. We believe the evidence suggests murder in the second degree. But by a long line of authorities, even if this be not true, the giving of the charge was not such error of which appellant could complain. Where appellant is being tried for murder it is not prejudicial error to charge upon a lower grade of murder than the one suggested by the evidence.

He also complains of the following portion of the court's charge: "You are further charged that any defendant in a criminal action shall be permitted to testify in his own behalf therein; but the failure of any defendant to so testify, shall not be taken as a circumstance against him. In this case, the defendant has failed to take the stand and testify in his own behalf; and you are charged that you must not take such failure to testify in his own behalf as a circumstance against, nor must you discuss such failure on his part to testify, when you retire to consider of your verdict." There is no error in this charge.

In his supplemental motion for new trial appellant complains that the juror Glass was not an impartial and unbiased juror; that he qualified himself as a competent juror for the purpose of getting on said jury, in order to convict this defendant; and in so qualifying himself he perpetrated a fraud upon the court and defendant, and affidavits are attached. The affidavits set up substantially the truthfulness of the motion; but these are squarely controverted by the State, through the testimony of the juror Glass; and the issue being sharply drawn, the court decided against appellant. We can not say that the court abused its discretion in so holding, in as much as his holding is supported by the facts.

He also complains that during the trial the jury were permitted to separate without the permission of the judge or the consent of defendant and his counsel. To support this, affidavits are attached. The facts appear to be, substantially, that part of the jury were white men and part were negroes; that when the jury went to their meals the white men would eat in the dining room and the negroes ate in the passageway between the dining room and kitchen, which adjoined the dining room; the jurors were in view of each other. Appellant's insistence is that during the meals eaten in this manner the negroes were not attended by a sheriff. This is thoroughly controverted by the State, it being shown by affidavits that an officer was always in charge of the jury, and most, if not all the time, one officer was in the passageway with the negroes, and one in the dining room with the white men. This is not such a separation as the law inhibits. It is not the custom or

practice in this State for white men and negroes to eat at the same table or in the same dining room.

Appellant also insists that one of the jurors left the jury and went twenty or thirty yards away from the jury. This is explained by affidavits; and it appears that said juror went to where his horse was fastened; that no one was with him, but he was in clear view of the officer; that no one was nearer to him than the jury were, and that he immediately returned to the jury. As we have heretofore stated, in numerous cases, the utmost diligence and care must be exercised by the sheriff having the custody of juries, to keep them free from any possible contamination or corruption; however, we see no violation of the injunction heretofore given during the trial of this case.

The evidence, as indicated, amply supports the verdict of the jury; and the judgment is affirmed.

*Affirmed.*

[Motion for rehearing overruled without written opinion.—Reporter.]