Don Carlos McGEE, Appellant,

v.

STATE of Texas, Appellee.

No. C14–83–105–CR.

Court of Appeals of Texas,
Houston (14th Dist.).

March 28, 1985.

Rehearing Denied May 16, 1985.

Stephen G. Schulz, Galveston, for appellant.

Miguel Martinez, Dist. Atty., Houston, for appellee.

Before JUNELL, MURPHY and SEARS, JJ.

## OPINION

JUNELL, Justice.

Appellant was convicted of delivery of less than 200 grams of a controlled substance, Pentazocine, under Tex.Rev.Civ. Stat.Ann. art. 4476–15 §§ 4.02(d)(4)(U), 4.032(b) (Vernon Supp.1985). His sentence was enhanced by one prior felony conviction, and he was sentenced to twenty years' confinement and fined $5000.00. We affirm the conviction.

A recitation of facts is unnecessary.

In grounds of error one and two, appellant argues that his conviction should be reversed because the state did not allege and the court did not charge that the quantity of Pentazocine he delivered had a "potential for abuse associated with a depressant effect on the central nervous system." In ground of error three, he argues that, even if the indictment and charge had contained that language, the evidence was insufficient to establish that he delivered a quantity with a potential for abuse. Appellant derives these arguments from the language of Tex.Rev.Civ.Stat.Ann. art. 4476–15 § 4.02(d)(4)(U) (Vernon Supp.1984):

> (d) Penalty Group 3. Penalty Group 3 shall include the following controlled substances:
>
> \* \* \* \* \* \*
>
> (4) Any material, compound, mixture, or preparation which contains any quantity of the following substances having a potential for abuse associated with depressant effect on the central nervous system:
>
> \* \* \* \* \* \*
>
> (U) Pentazocine, its salts, derivatives, or compounds or mixtures thereof;

In the indictment, the State alleged that Appellant:

> on or about the ... 13th day of ... February.... A.D. One Thousand Nine Hundred and Eighty-Two, and anterior to the presentment of this indictment in the County of Galveston and State of Texas, did then and there intentionally and knowingly deliver to Eddie Collins a controlled substance, to-wit: Pentazocine in the amount of less than 200 grams by aggregate weight including any adulterants or dilutants by the actual transfer of the said controlled substance from Don Carlos McGee to Eddie Collins,

The charge tracked the language of the indictment.

As the State correctly points out, the term "having a potential for abuse" modifies the word "substance," not the word "quantity." *See Sheffield v. State,* 623 S.W.2d 403 (Tex.Crim.App.1981); *Sheffield v. State,* 635 S.W.2d 862 (Tex.App.— Tyler 1982, no pet.). Thus, the State was not required to allege or prove, and the court was not required to charge, that appellant delivered a quantity of Pentazocine which had a potential for abuse associated with a depressant effect on the central nervous system. Since the indictment and charge were properly drawn and the testimony of the undercover narcotics officer was sufficient to prove the allegations, grounds of error one, two and three are overruled.

In ground of error four, appellant asserts that he did not receive a fair trial because, during voir dire, the State "convey[ed] to the jury the fact that [he] had a prior felony conviction." Appellant represents to this court that the prosecutor asked each potential juror a question similar to the following:

Could you consider a 20 year sentence that we have been talking about earlier if you found in a proper case that a Defendant had been previously convicted of a felony? Could you consider that punishment if you found he again pushed drugs?

Appellant then attempts to analogize these facts to facts in cases which hold that the admission into evidence of an extraneous offense is incurable, reversible error, *see Newman v. State*, 485 S.W.2d 576, 578 (Tex.Crim.App.1972), regardless of whether an objection was lodged. *See Navajar v. State*, 496 S.W.2d 61 (Tex.Crim.App.1973).

We first observe that appellant has misrepresented the facts to this court. Of the thirty-one veniremen, the prosecutor asked twenty of them a general question such as whether they could assess the maximum range of punishment if it were shown that appellant had a previous felony conviction. Although courts have expressed disapproval with such a question to the panel as an entirety, they have held that it is permissible because the answers received aid both parties in the wise use of their peremptory challenges and their challenges for cause. *See, e.g., Mathis v. State*, 576 S.W.2d 835 (Tex.Crim.App.1979) (en banc). The *Mathis* court also mentioned without comment that the prosecutor similarly questioned individual veniremen. *Id.* at 837. As stated in *Plair v. State*, 102 Tex.Crim. 628, 279 S.W. 267 (1925), it is reversible error to refuse a defendant's request to individually interrogate veniremen. We can find no fault with such a procedure merely because the prosecutor, rather than the defendant, wishes to do so.

The prosecutor asked only two veniremen the question quoted above.

■ We acknowledge that the prosecutor overstepped the permissible boundaries of voir dire by inquiring of those two veniremen whether they could assess the maximum punishment if they found appellant was "again pushing drugs." However, appellant's attorney made no objection to any of the questions now complained of. His failure to do so constitutes a waiver of the error and preserves nothing for review.

Tex.Code Crim.Proc.Ann. art. 36.01 (Vernon 1981), states that:

A jury being impaneled in any criminal action, the cause shall proceed in the following order:

1. The indictment or information shall be read to the jury by the attorney prosecuting. When prior convictions are alleged for purposes of enhancement only and are not jurisdictional, that portion of the indictment or information reciting such convictions shall not be read until the hearing on punishment is held as provided in Article 37.07.

While our situation does not fall within the confines of art. 36.01 because the prosecutor did not read the enhancement paragraph of the indictment and because appellant had never been convicted of "pushing drugs," we find the reasoning employed in cases interpreting the article enlightening and applicable.

*Cox v. State*, 422 S.W.2d 929 (Tex.Crim.App.1968), involved a situation governed by art. 36.01. In *Cox*, the prosecutor read the indictment, including the five enhancement paragraphs, to the jury during opening arguments in the guilt stage of the trial. No objection was made. The court stated:

The only question presented is whether in absence of an objection, a violation of Article 36.01(1), supra, constitutes reversible error. There can be no doubt that the provisions of Article 36.01(1), *supra*, were designed to serve a salutary purpose and should be strictly complied with by all prosecutors. If the action here complained of had been permitted *over objection*, reversible error should follow. *We cannot agree, however, that*

*in absence of an objection, exception, or a request for an instruction or a mistrial, an accused may successfully raise such question for the first time on the motion for new trial as attempted here. Cf. Kelly v. State,* 99 Tex.Cr.R. 403, 269 S.W. 796.

*Id.* at 930 (emphasis added). Similarly, in *Bell v. State,* 504 S.W.2d 498 (Tex.Crim. App.1974), the indictment was read to the jury and the prior conviction was proved during the guilt phase of the trial. Again, no objection was made. Relying on *Cox,* the court held that although the prosecutor acted improperly, the defendant did not preserve error for review because he did not object. Finally, in *Frausto v. State,* 642 S.W.2d 506 (Tex.Crim.App.1982), the prosecutor read the enhancement clause to the veniremen during voir dire. The trial court overruled the defendant's objections and the court of criminal appeals reversed the conviction. Read together, these cases hold that the failure of a defendant to object waives the error. Thus, ground of error four is overruled.

▇▇▇ Appellant next complains in grounds of error five and six of several remarks the prosecutor made during his closing arguments. At the guilt/innocence stage of the trial, the prosecutor argued:

(1) If we can't get a conviction in that type of situation, we might as well forget trying to get the drug pushers convicted in Galveston.

(2) If you let Don Carlos McGee go, if you say by your verdict not guilty, I want you to think of the effects of this on the community.

(3) You know as well as I do, in your hearts, that Don Carlos McGee is guilty. You know that.... All I am asking you to do is find him guilty of the offense that we have charged him with.

At the punishment stage, the prosecutor argued:

(4) Your verdict is very important. It is extremely important on the effect of people's lives, but not just the dope dealers' lives. You have got an obli-

gation to the rest of society.... You can sentence him now or you can sentence the people out on the street ...

(5) The Defense tells us a story that this is not a crime of violence, that there was no violence. I submit that his felony conviction of possession of a prohibited weapon, not just possession of a handgun, but possession of a prohibited weapon is a crime of violence. I submit to you that possession of a handgun that he possessed and was convicted of is a crime of violence and I submit something else: When he is out there selling sets on the street, he is guilty of a crime of violence ...

The permissible areas of jury argument include: (1) summation of evidence; (2) reasonable deductions from the evidence; (3) answers to arguments of opposing counsel; and (4) a plea for law enforcement. *Wade v. State,* 627 S.W.2d 777 (Tex.App.—Waco 1981, no pet.). Appellant argues that the above-mentioned statements made by the state overstepped these bounds. However, no objection to any of these arguments was made either during or after the prosecutor's arguments. The court in *Spaulding v. State,* 505 S.W.2d 919, 922 (Tex.Crim. App.1974), stated the pertinent standard of review:

The test as to whether an improper argument constitutes reversible error is whether, (1) the argument is manifestly improper, harmful and prejudicial, or (2) it is violative of a statute or, (3) it injects a new and harmful fact into the case.

However, the court of criminal appeals repeatedly has held that, except in cases where the argument complained of was so obviously harmful that its effect could not have been controlled by the action of the trial court in response to a timely and proper objection, a timely objection is necessary to preserve error. In our opinion the argument complained of does not fall within the exception. *See, e.g., Carrillo v. State,* 566 S.W.2d 902 (Tex.Crim.App.1978) (objection must be timely); *Collection Consultants,*

*Inc. v. State,* 556 S.W.2d 787 (Tex.Crim. App.1977), appeal dism'd, 436 U.S. 901, 98 S.Ct. 2228, 56 L.Ed.2d 399 (1978); *Clayton v. State,* 502 S.W.2d 755 (Tex.Crim.App. 1973) (specific objection preferred, but blanket objection will preserve error); *Hall v. State,* 492 S.W.2d 512 (Tex.Crim.App. 1973); *Joines v. State,* 482 S.W.2d 205 (Tex.Crim.App.1972) (objection must be timely); *Archer v. State,* 474 S.W.2d 484 (Tex.Crim.App.1971). Thus, in our case, appellant's failure to lodge even a single objection constitutes a waiver of the allegedly erroneous argument and preserves nothing for review.

Further, we hold that each of the above-mentioned remarks was within the permissible bounds of jury argument as set forth in *Wade v. State,* 627 S.W.2d 777 (Tex.App. —Waco 1981, no pet.).

Appellant quotes out of context the argument set forth in (1) above. The lead-in remarks and that conclusion are now set forth:

> The question is this. The question is, when a police officer testifies and goes out and risks his life on the street and makes a buy from a drug dealer and gets a good look at him as he did here, when he goes up to the location—and remember that Officer Collins, remember his statement that the situation that it was like a Dairy Queen. You knock on what was at that time a sliding wooden window and the window goes up and the Defendant sells him drugs. The Defendant delivers drugs to him and the police officer gets a look at the Defendant and the Defendant is known to reside at that location and when this peace officer gets on the stand and he testifies. I will tell you something. If we can't get a conviction in that type of situation, we might as well forget trying to get the drug pushers convicted in Galveston.

In our opinion, the prosecutor merely summed up the evidence and made a plea for law enforcement. The second and fourth arguments also constituted pleas for law enforcement. Similar arguments have been upheld. For example, in *Givens v.*

*State,* 554 S.W.2d 199, 200 (Tex.Crim.App. 1977), the prosecutor argued:

> And that's why I say your verdict is important. Not only when you talk about rehabilitating an individual and trying to keep him off the streets but to protect the rest of us until he is rehabilitated.
>
> \* \* \* \* \* \*
>
> If he cannot be rehabilitated it will keep him off the streets for as long as possible.

The court held that the inference to be drawn from the prosecutor's argument was that the defendant should be placed where he could be rehabilitated and if he were not rehabilitated, society should be protected by keeping the defendant off the streets as long as possible. In *Williams v. State,* 607 S.W.2d 577, 581 (Tex.Crim.App.1980), the prosecutor argued:

> You're going to say by your verdict you can come down and you can just lope off with the first one if you will just tell people you're sorry—
>
> \* \* \* \* \* \*
>
> ... If you want to give him his first aggravated robbery free, if you want to give him probation, if you want to put him out on the street—

The court again held that this was merely a proper plea for law enforcement. Finally, in *Jimenez v. State,* 421 S.W.2d 910, 913 (Tex.Crim.App.1967), *cert. denied,* 391 U.S. 954, 88 S.Ct. 1859, 20 L.Ed.2d 868 (1968), the prosecutor argued:

> This [drugs] is the sort of thing that can even get into the hands of school children and I believe we all know that. I am not saying that that is what this particular—

The court held that statement to be a reasonable deduction from the evidence.

Each of the above examples dealt with the effect of either the crime or criminal on the community and all were held not to constitute reversible error. The remarks made in our case are more pointed but still constitute a proper plea for law enforcement. We would hold that the re-

marks quoted in (1), (2) and (4) did not constitute error.

 Appellant complains of the argument set forth in (3) above constituted error because the prosecutor injected his personal opinion of appellant's guilt. However, once again, appellant made no objection to the argument. Thus, he has waived error, if any. Had the court sustained a timely objection, appellant could have requested an instruction to disregard the remark. The court of criminal appeals repeatedly has held that such an instruction would cure the error, if any. *See Parr v. State*, 575 S.W.2d 522 (Tex.Crim.App.1978); *Spaulding v. State*, 505 S.W.2d 919 (Tex. Crim.App.1974); *Ramos v. State*, 419 S.W.2d 359 (Tex.Crim.App.1967); *Rancier v. State*, 63 S.W.2d 697 (Tex.Crim.App. 1933); *Hinton v. State*, 65 Tex.Crim. 408, 144 S.W. 617 (1912).

 Appellant argues that the final complained of remark, (5) above, constituted error because the prosecutor expressed a "personal opinion as to the gravity of the crime." We can find no authority, and appellant has cited none, which forbids such an expression.

 Finally, appellant argues that all of the remarks constituted cumulative error. We disagree and again note that no objections were lodged so as to preserve anything for review. Grounds of error five and six are overruled.

 In ground of error seven, appellant argues that his conviction must be reversed because it was based upon the uncorroborated testimony of an accomplice, relying on Tex.Code Crim.Proc.Ann. art. 38.14 (Vernon 1979). Appellant bases his argument on the fact that nobody corroborated the testimony of the undercover narcotics officer who received delivery of the Pentazocine from appellant. In so arguing, appellant is attempting to place a burden on the state which is not statutorily mandated. As the state correctly points out, the Controlled Substances Act requires corroboration only in "offer to sell" cases. Tex.Rev.Civ.Stat.Ann. art. 4476–15

§ 1.02(8) (Vernon Supp.1984). *See Sheffield v. State*, 635 S.W.2d 862, 863 (Tex. App.—Tyler 1982, no pet.). This was a "delivery" case. Ground of error seven is overruled.

In appellant's eighth ground of error, he urges that his conviction should be reversed because he did not receive effective assistance of counsel. He bases this conclusion upon unsubstantiated assertions that the attorney appointment system in Galveston County "works to frequently provide attorneys with little or no experience in criminal matters, to assert the rights of defendants," that these attorneys frequently are mere figureheads, and that he was represented by an attorney who had never tried a criminal case.

The applicable standard of review in Texas is discussed in *Ex Parte Duffy*, 607 S.W.2d 507 (Tex.Crim.App.1980) (en banc). In that case, the court held that a defendant has a right to "reasonably effective assistance of counsel." *Id.* at 516. We observe that the court of criminal appeals has not yet had the occasion to decide whether the second prong of analysis in *Strickland v. Washington*, — U.S. —, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), is applicable in Texas.

*Strickland* outlines a two-pronged analysis: (1) a defendant must show that he did not receive reasonably effective assistance of counsel; and if that prong is shown, (2) a defendant must then show a reasonable probability that, but for counsel's unprofessional errors, the outcome of the trial would have been different.

We hold that appellant has not established that the counsel he received was not reasonably effective. A defendant does not have a right to errorless counsel. Further, we are to scrutinize counsel's representation in a highly deferential manner while attempting to ignore the distorting effects of hindsight. *See Ingham v. State*, 679 S.W.2d 503 (Tex.Crim.App.1984) (en banc).

 We acknowledge that the record reveals several instances in which appel-

lant's attorney could have objected. In each instance, except two, though, the objection properly should have been overruled. The sole instances in which an objection should have been sustained occurred during voir dire. However, as stated in *Weathersby v. State*, 627 S.W.2d 729 (Tex.Crim.App.1982), an isolated failure to make a certain objection does not constitute ineffective assistance of counsel.

■■■ As stated, we do not find ineffective assistance of counsel. Thus, we need not reach the second prong of *Strickland.* If we did need to reach this issue, we would hold that appellant has not shown that, but for counsel's unprofessional errors, a different outcome was reasonably probable. Ground of error eight is overruled.

The conviction is affirmed.

## DISSENTING OPINION

SEARS, Justice, dissenting.

I respectfully dissent. Grounds of error four and five should be sustained and the judgment should be reversed and remanded to the trial court for a new trial. This case involves appointed counsel handling his first defense of a criminal case and gross prosecutorial misconduct. The trial is replete with error from voir dire to Motion for New Trial.

## VOIR DIRE

During voir dire of the prospective jurors, the district attorney qualified the panel for an enhanced punishment range as follows:

> If it was shown that a prior felony, that a Defendant has been convicted of prior felony and the range of punishment then increased, then, the highest level of the range of punishment, it could expand to 20 years in the penitentiary; and again, a person may have a lot of offenses or may have one or may have done it for free as a favor to a friend, or he may have done for money. There are a lot of different circumstances. Could everyone in that case, if it was shown that a Defendant had a prior felony record—does everyone know what a felony is? It is an offense which is punishable by a period of confinement in the penitentiary. If it were shown that a felony had been committed and a Defendant had been previously convicted of a felony and had been sent to the penitentiary, can everybody consider up to 20 years in the Texas Department of Corrections? Would anyone be unable to do that?

There is no indication that any juror had a negative response to the question nor did any juror have any questions to ask in regard to the qualification of punishment on enhancement.

The first section of TEX.CODE CRIM. PROC.ANN. art. 36.01 (Vernon 1981) reads as follows:

> The indictment or information shall be read to the jury by the attorney prosecuting. When prior convictions are alleged for purposes of enhancement only and are not jurisdictional, that portion of the indictment or information reciting such convictions shall not be read until the hearing on punishment is held as provided in Article 37.07.

Pursuant to the foregoing art. 36.01 and pursuant to Texas case law, the previous qualification of the jury panel for enhanced punishment was proper. However, the state was not content with merely qualifying the jury, but proceeded to embark on a course of conduct that was calculated and intended to prejudice the jury against this appellant.

The state proceeded to ask twenty-two prospective jurors individual questions concerning whether or not they could consider the full range of punishment of twenty years. This was accomplished without objection by attorney for appellant and without interference and/or instruction from the trial court. Not only did the state repeatedly ask the same question, and hypothetical questions, concerning enhancement of punishment and prior felony convictions in such a manner as to leave no doubt that the accused was a convicted felon, but it sank the harpoon even deeper:

The State: "Could you consider a 20-year sentence that we have been talking about earlier if you found in a proper case that a Defendant had been previously convicted of a felony? Could you consider that punishment if you found he *again pushed drugs?*" (emphasis added)

And, (to a different juror):

The State: Mrs. Roan, could you consider that full range of punishment including up to 20 years in the Texas Department of Corrections if it was shown that a Defendant previously had been convicted and if you had found he was *again pushing drugs?* (emphasis added)

The prosecutor not only advised the jury panel that appellant had previously been convicted of a felony, but he lied to the prospective jurors by telling them that the appellant had been convicted of "pushing drugs," a crime for which he had never been convicted. No reasonable person can believe that once a jury has been instructed that the accused was previously convicted for the same crime with which he now stands charged, that it can now try the accused solely for the crime with which he has been charged, and erase from its mind the fact that he was previously convicted of the exact same crime. There is no doubt that the provisions of art. 36.01(1) were designed to serve a salutary purpose and implemented to mandate strict compliance by all prosecutors. *Cox v. State*, 422 S.W.2d 929 (Tex.Crim.App.1968). The obvious purpose of art. 36.01 is to prevent the extreme prejudice which will inevitably result from advising a jury at the outset of the proceedings that the defendant is a convicted felon. Violation of the mandatory provisions of art. 36.01 is reversible error. *Heredia v. State*, 508 S.W.2d 629 (Tex.Crim.App.1974).

Justice Teague of the Texas Court of Criminal Appeals in *Frausto v. State*, 642 S.W.2d 506 (Tex.Crim.App.1982), made some interesting observations of the purpose of the art. 36.01 and the necessity to comply with it. In *Frausto*, the state also qualified jurors individually on the enhanced range of punishment. However, *Frausto* differs from this case in that an objection was made and overruled. It is interesting to note that the contents of the enhancement paragraph were communicated to that jury but then dismissed, leaving the impression that the error, if any, was harmless. However, Justice Teague wrote, "We do not consider this fact essential to our decision, as the ruling on appellant's objection was either correct or erroneous at the time it was made, not withstanding subsequent developments." *Id.* at 508. Both *Frausto* and *Cox* stand for the proposition that art. 36.01 is mandatory and a violation will result in reversal if there is an objection and the objection is overruled. The question then remains, is failure to object ineffective assistance of counsel?

While I recognize and acknowledge the cases holding that failure to object to a violation of art. 36.01 waives any error created by the violation, I am also aware that this error could have been avoided by a sua sponte motion by the court to dismiss the jury panel, and then providing the appellant with a clean, untainted jury in this cause. The error was obvious to everyone in the courtroom except appellant's attorney. The court was aware that appellant's attorney was appointed counsel and this was his first criminal trial, and appellant was even aware of the harm caused by failure to object, as he made it grounds for a motion for new trial in a post-trial motion.

In addition to the foregoing, the prosecutor began asking individual jurors what they thought about the drug problem in Galveston County, whether or not they thought drug dealing was a significant problem, and he solicited their views and comments without objection. He conversed with eight members of the jury panel individually, and received the following response from Mr. Robison:

The State: "What do you think about street drug deals?"

Mr. Robison: It is pretty bad here in Galveston and basically, the Houston

area, too. I have a lot friends in the Coast Guard there and they tell me that there are more drug traffic in and out of Galveston from the Gulf of Mexico.

Further, one panelist was a nurse and she and the prosecutor discussed the nature and effect of the drug appellant was charged with selling. The jury had the benefit of all of this "testimony" without objection from counsel for appellant.

One panelist was the victim of a shoplifting case, a pickpocket case and breaking and entering an automobile. Attorney for appellant asked the following question: "You are prepared to give this person a fair trial and follow the law that the judge instructs you on?" Instead of trying to dismiss this juror for cause, he qualified him better than the prosecution could have done.

The state's attorney went to great lengths to show the panel that he was representing the *citizens* and the defense counsel was representing the criminal. He then closed his voir dire with the following statement:

I will again simply ask that you give my clients, the citizens of Galveston County, an opportunity to grow up in a society as free of drug dealers as possible and I ask for your consideration for my clients in this case.

Before the jury was selected and impaneled, appellant lost all chance of a fair trial. The following errors are merely cumulative, but nonetheless effective, and designed to deprive appellant of the fundamental right to a *fair* trial.

### TRIAL

The majority opinion chose not to consider the facts of the case in reaching its decision. However, the standard of review for ineffective assistance of counsel is to review the facts of the case to determine if the appellant has been prejudiced by the ineffective assistance of counsel. *Strickland v. Washington,* —— U.S. ——, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

The sole complainant against appellant in this case was a Beaumont, Texas, narcotics officer who volunteered his services to the Galveston Police Department. He viewed police file photos of individuals suspected of involvement in drug transactions, and then went into a known drug area of Galveston to attempt to purchase drugs.

He testified that he knocked on a doorway located in an alley at approximately 7:30 p.m. and the lid on a mail slot in the door opened. A voice asked "What do you want?" and the officer responded "two sets." At this time the officer backed off approximately nine feet from the mail slot and positively identified appellant as the person on the other side of the door. The officer had never seen the appellant before this encounter, did not arrest him at the time and has not seen him since the encounter except for the date of trial. He testified that he had made several drug busts prior to the date of this offense, many drug busts after this offense and that he had testified in numerous drug trials before and after the date of this offense. Other than the testimony of other officers regarding receiving the alleged drugs, putting them in a ziplock bag and subsequently turning them over to the chemist for testing, as well as the testimony of the chemist, this was the extent of the state's case against appellant.

The officer testified that the sun set between 5:30 and 6:00 p.m. the day of the offense. He testified that there were no lights on the door, however there was a light in the alley down the street. He further testified that the mail slot in the door was approximately five to six inches high and eight inches long and was approximately at "belly" height from the ground.

Appellant's defense to this charge was alibi. Although appellant did not take the stand, defense witnesses testified that at the time the offense was alleged to have been committed, appellant was in his own apartment located in another part of the city, attending a surprise birthday party given in his honor. Beverly Hemmingway testified that she was at the party from

8:00 p.m. to 1:30 a.m., and during that period of time defendant was present and never left the apartment. Joyce Finch testified that she arranged the surprise birthday party and approximately twenty persons attended. She testified that the appellant was at the apartment on the date the offense was alleged to have been committed from 7:00 p.m. to 3:00 a.m. the next morning.

In cross-examining Joyce Finch, the state asked her several questions about her telephone, and in particular whether or not she had a three-way telephone which would permit a conversation between three persons at three different locations. She answered that she did. The state then asked her the following questions:

Q. Isn't it true that you offered Diane Willis money to come and testify that she was with Don Carlos McGee the night of that party?

A. No, I didn't.

Q. Do you know Diane Willis?

A. Yes.

Q. Isn't it true that you offered her money to testify she was there whatever time the offense was supposed to have taken place?

A. No.

Q. What did you talk to her about on the phone when you talked to her on your three-way hookup?

A. I asked her would she go and talk to Mr. Watkins about testifying. I did not offer to pay Diane any money.

Q. Who was on the phone?

A. Me and Don.

Q. You and Don Carlos McGee called up Diane Willis?

A. Yes. He told me and I called Diane.

All of the foregoing questions and answers were made without objection. The questions were highly improper and prejudicial and the damage was caused by the question alone and not the answer. Not only did the state effectively destroy the credibility of the defense witness with facts that were not in evidence in the case, but it also accused appellant of committing a crime with which he has not been charged; to wit: bribery of a witness.

The Court of Criminal Appeals has consistently found that when a prosecutor alleges facts for which no evidence has been adduced at trial, the result is harmful error. While most of the case law deals with statements made in argument as opposed to questions asked of a defense witness, the analogy is apparent. In *Daniel v. State*, 550 S.W.2d 72 (Tex.Crim.App.1977), the state alleged that a witness could not appear and make identification because she had been shot in pursuit of the defendant. In *Thornton v. State*, 542 S.W.2d 181 (Tex. Crim.App.1976), the prosecutor alleged that some witnesses were not present because they were at Huntsville serving seven years for the same offense. There are many cases in the area of pornography dealing with this same situation. *See Moore v. State*, 530 S.W.2d 536 (Tex.Crim. App.1976) (prosecutor's indication of causal connection between dirty movies and sex crimes was reversible error where there was no evidence of such on record).

There is also a line of cases that hold that it is harmful error to label the defendant with conclusions not supported by facts. *See Duncantell v. State*, 563 S.W.2d 252 (Tex.Crim.App.) (en banc), *cert. denied*, 439 U.S. 1032, 99 S.Ct. 637, 58 L.Ed.2d 695 (1978); *Washington v. State*, 484 S.W.2d 721 (Tex.Crim.App.1972); *Howard v. State*, 453 S.W.2d 153 (Tex.Crim. App.1970), and others. While these cases also deal with argument as opposed to questioning of a witness, it is clear that it is improper to label the accused as something that he is not. Further, the error is compounded by alleging that the facts not in evidence are true.

In *Lounder v. State*, 46 Tex.Crim. 121, 79 S.W. 552 (1904), the court held that testimony regarding an attempt to improperly influence a witness is not admissible against a defendant in a criminal case unless it is shown that he authorized the attempt. While the conviction was affirmed in *Lounder* because the crime was

so grotesque and the evidence overwhelming, the court nonetheless held that it was error to admit such testimony. Extraneous transactions which constitute offenses alleged to have been committed by the accused can only be admissible upon a showing that the transaction is relevant to a material issue in the case at bar, and that the relevancy value of the evidence outweighs its inflammatory or prejudicial potential. *Ruiz v. State*, 579 S.W.2d 206 (Tex.Crim.App.1979). However, it is always required that the commission of an extraneous offense be proved and that the accused is shown to be the perpetrator. 23 TEX.JUR.2d *Evidence* § 195 (1961).

The error committed by the state in the questioning of this witness is generally found in the cross-examination of defense character witnesses. However, the improper cross-examination accused the defendant of having committed a crime with which he was not charged. It is the established general rule of evidence that proof of extraneous transactions or specific acts of misconduct are inadmissible because they are irrelevant to the contested material issues involving the crime for which the accused is on trial. The accused is entitled to be tried on the charges filed and not for some collateral crime of which he has no notice. *Jones v. State*, 568 S.W.2d 847 (Tex.Crim. App.1978) (en banc). In *Murphy v. State*, 587 S.W.2d 718 (Tex.Crim.App.1979), the state tried to introduce extraneous offenses to attack the credibility of alibi witnesses. The court held that it was reversible error and stated that the purpose of the evidence was to show the jury that the witnesses were bad people and that the defendant was a criminal generally, and was therefore unworthy of belief.

The cross-examination was also improper in the manner in which the question was framed. The state, by asking the witness "Isn't it true ..." implied that the act had actually been committed. This same type of cross-examination has been held to be reversible error even where no objection has been made. *Odum v. State*, 533 S.W.2d 1 (Tex.Crim.App.1976). While the state could have asked the witness if she had ever offered a bribe to anyone in relation to testimony in this case, the state cannot frame the question so as to imply that the act has actually been committed. *Moffett v. State*, 555 S.W.2d 437 (Tex.Crim. App.1977). *See also Gaines v. State*, 481 S.W.2d 835 (Tex.Crim.App.1972); *Brown v. State*, 477 S.W.2d 617 (Tex.Crim.App.1972). Even where the question has been framed as "Did you know ..." the questions are improper. *Stephens v. State*, 660 S.W.2d 85 (Tex.Crim.App.1983) (en banc).

In a recent Court of Criminal Appeals case involving the erroneous admission of evidence, Justice Clinton stated that in order to label a patent error as harmless, it must be demonstrated with clarity, in the context of the case, that the error did not materially contribute to the jury's verdict. *Bordelon v. State*, 683 S.W.2d 9 (Tex.Crim. App.1985) (en banc). In *Bordelon*, as in this appeal, the jury's consideration of the inferences arising from the questions propounded to the witnesses may well have been determinative in the verdict of guilty. There can be no doubt that the state's improper cross-examination of the witness was calculated to represent to the jury that there was other evidence available to show that appellant attempted to bribe, or influence another to bribe, a witness in this case. This same approach was attempted in *Berryhill v. State*, 501 S.W.2d 86 (Tex. Crim.App.1973), wherein the state asked "Isn't it a fact ..." questions in cross-examination of the defendant. The questions were asked and the answers received without objection by defendant's attorney. The state then went further and alluded to those "Isn't it a fact ..." questions and allowed the jury to speculate as to the existence of facts which were not in evidence. The court held that the actions of the state constituted reversible error. The state is permitted to ask a reputation witness if he has heard of specific acts of misconduct, however the sole purpose of this line of questioning is to test the witness' credibility as to the defendant's reputation. *See* 62 TEX.JUR.2d *Witnesses* § 196 (1965). However, the state may not

ask whether the witness has personal knowledge of the act nor may the question be framed so as to imply that the act has actually been committed. *Sisson v. State*, 561 S.W.2d 197 (Tex.Crim.App.1978); *Moffett v. State*, 555 S.W.2d 437 (Tex.Crim. App.1977); *Carey v. State*, 537 S.W.2d 757 (Tex.Crim.App.1976); *Brown v. State*, 477 S.W.2d 617 (Tex.Crim.App.1972). Although it has been held that failure to object in some instances waives the error, the question remains whether failure to object is a result of ineffective assistance of counsel. Further, when the error is deliberate, calculated and designed to violate the appellant's right to a fair trial, it deprives him of due process of law and as such constitutes fundamental error, for which objection is not necessary. *Anderson v. State*, 525 S.W.2d 20 (Tex.Crim.App. 1975).

### ARGUMENT

In final argument, the state's prosecutor committed error on several occasions, all without objection by appellant's attorney. To wit:

> The question is, when a police officer testifies and goes out and risks his life on the street and makes a buy from a drug dealer ...

> If we can't get a conviction in that type of situation, we might as well forget trying to get the drug pushers convicted in Galveston.

> If you let Don Carlos McGee go, if you say by your verdict not guilty, I want you to think of the effects of this on the community. You know as well as I do, in your hearts, that Don Carlos McGee is guilty. You know that. You know that. It is pretty darn easy to sit there and second-guess a police officer from Mr. Watkins' comfortable arm chair there while the police officers are risking their lives. Well, somebody might have seen them ... and somebody might have shot Eddie Collins.

Further, the state in argument pertaining to the testimony of Mrs. Finch, said the following:

> She said that yes, she owned a three-way phone and could she explain to a jury what it was. Then I asked the question about bribery about Ms. Willis. Anyway, she testified that the Defendant made a phone call to Diane Willis about this case and that is the reason ...

Not only did the prosecutor improperly discredit the defense witnesses, and allege that appellant committed an extraneous offense, but he also injected matters into the argument that were clearly not presented in evidence. However, what is even more reprehensible is that he invited the jury to speculate on extraneous facts in order to support a conviction. Such tactics are said to be reversible error. *See Berryhill*, 501 S.W.2d at 87.

The prosecutor also argued facts that were not in evidence when he alluded to police officers risking their lives on the streets making buys from drug dealers, and the fact that someone may have shot Eddie Collins (the state's complaining witness). The law is well-settled that the state may not in argument assert facts that are not in evidence. (See cases cited earlier in this opinion).

It is also well-settled in Texas that the state cannot argue the demands and expectations of the community. *Porter v. State*, 154 Tex.Crim. 252, 226 S.W.2d 435 (1950); *Richardson v. State*, 158 Tex.Crim. 536, 257 S.W.2d 308 (1953); *Pennington v. State*, 171 Tex.Crim. 130, 345 S.W.2d 527 (1961); *Cortez v. State*, 683 S.W.2d 419 (Tex.Crim.App.1984) (en banc). Further, bare assertions of defendant's guilt are strictly forbidden. *Villalobos v. State*, 568 S.W.2d 134 (Tex.Crim.App.1978). Even indirect comments on the defendant's guilt have been held improper. *See Elizondo v. State*, 545 S.W.2d 453 (Tex.Crim.App.1976), and *Blackstock v. State*, 433 S.W.2d 699 (Tex.Crim.App.1968).

The prosecution can properly argue for society's right to demand enforcement of the law in an appeal to the jury for protection of the community. *Perbetsky v. State*, 429 S.W.2d 471 (Tex.Crim.App.1968) and

*Williams v. State,* 575 S.W.2d 30 (Tex. Crim.App.1979). However, it is error for the state to argue that the community sentiment "expects, requires, desires, or wishes" a jury to find defendant guilty. *Woolly v. State,* 93 Tex.Crim. 384, 247 S.W. 865 (1923).

There can be no doubt that the prosecutor's argument violated all of the rules and served no purpose other than to inflame and prejudice the minds of the jurors. Such prosecutorial misconduct requires reversal.

## PUNISHMENT

The state presented the following witnesses during the punishment phase of the trial and elicited testimony as follows:

*Officer Kitchen* (Galveston Police Department)—testified regarding fingerprint comparison in the pen packet, and identified appellant as the person previously convicted of the misdemeanor offenses of possession of a prohibited weapon and possession of marijuana, and the felony offense of possession of hydromorphone.

*Mr. Hewett* (Assistant District Attorney)— was the prosecutor who took appellant's plea for the misdemeanor offense of possession of marijuana and for which he received a sentence of one year in the county jail.

*Judge Wilson* (Galveston County Court Judge)—identified appellant as the defendant in the misdemeanor marijuana and prohibited weapon cases.

The following witnesses were presented before the court outside the presence of the jury at the request of appellant's attorney:

*Officer Boyle* (Galveston Police Department)—testified that appellant's reputation in the community was bad. His only knowledge of appellant was in connection with the criminal cases handled or investigated by this officer. Appellant objected to his testimony on the grounds that he was not qualified as a reputation witness and his objection was overruled by the court.

*Officer Lopez* (Galveston Police Department)—testified that appellant's reputation was bad. Appellant objected on the grounds that it was repetitious of Officer Boyle's testimony and the objection was overruled.

*Officer Roberts* (Galveston Police Department)—Like the other officers, Roberts' only knowledge of appellant was through his investigation and/or handling of appellant in prior criminal cases. Appellant objected to his testimony on the grounds that he was unqualified on the issue of appellant's reputation. Objection was overruled.

The jury returned and the following witnesses appeared and testified that appellant's reputation was bad. Again, their only knowledge of appellant was that knowledge gained in the investigation or handling of prior criminal charges against this appellant. No questions were asked of three of the witnesses and no objections were made to their testimony. The witnesses were *Mr. Garner,* a private attorney who was previously assistant district attorney, who handled the plea on appellant's charge of possession of a prohibited weapon; *Officers Boyle, Lopez,* and *Roberts* of the Galveston Police Department, who had testified previously outside the presence of the jury.

The punishment phase of this trial was one of the few instances where the attorney for appellant made objections to inadmissible testimony. However, the court incorrectly overruled the objections. There is an inherent need that reputation testimony come from individuals who have observed over a long period of time an individual's activities in the community in which he resides and works in order to produce a fairly trustworthy indication of reputation. The best application of this rule that I have found is located in *Moore v. State,* 663 S.W.2d 497, 500 (Tex.App.— Dallas 1983, no pet.):

> The trustworthiness of reputation testimony stems from the fact that a person is observed in his day to day activities by other members of his community and that these observations are discussed.

Over a period of time there is a synthesis of these observations and discussions which results in a conclusion as to the individual's reputation. When reputation is based solely on specific acts, this synthesis is lost, as well as its reliability. When reputation testimony is given by police officers who have investigated an individual's offenses and by victims of an individual act who have spoken only with others who are also victims, it is obvious that the witnesses' conclusions as to the appellant's reputation will be slanted against the individual and will not have the trustworthiness implicit in the exception to the hearsay rule. The conclusion of such witnesses as to the reputation may be vastly different from those who have had the day to day contact with the community envisioned in the traditional exception to the hearsay rule for reputation testimony. What is actually occurring with testimony of this type is that a witness takes the specific acts of the individual and then infers what the reputation of the person would be. In this respect, this evidence could easily be fabricated and, thus, loses its reliability. The Court of Criminal Appeals has recently affirmed the *Moore* court's reasoning in *Wagner v. State*, 686 S.W.2d 140 (Tex. Crim.App., 1985). The Court in *Wagner* held that "[K]nowledge of specific acts alone as a basis for reputation testimony violates the rationale for admitting such testimony in the first place." The *Wagner* Court held that the particular reputation testimony complained of was, however, harmless because extraneous incidences were not related to the jury and the state did not include this reputation testimony in his argument. However, appellant was not so fortunate. In this case, the prosecutor commenced his argument as follows:

Ladies and Gentlemen of the jury. Convicted, possession of marijuana. Convicted, possession of marijuana. Convicted, possession of marijuana. Convicted, intentional and knowingly carrying on about his person a handgun. Convicted of intentionally and knowingly carrying on or about his person a handgun. Convicted of possession of a controlled substance, Hydromorphone. Convicted, felony possession of marijuana. Convicted, possession of a prohibited weapon.... That is his legacy. The Defendant could have called any witnesses he wanted to from his community to tell you that he was good person and not to convict him that he had a good reputation.

The state went on to argue, without objection, that the defendant was out on the street "dealing dope like he was running a drive-in grocery store." The state continually argued, "You have got an obligation to the rest of society that that man has shown that he is not fit to live among us because he is a pusher and he lives and he breathes off of the weaknesses of others counting his pieces of silver." Then he wound up his argument with the incredible statement "You can sentence him now or you can sentence the people out on the street and I submit to you that they deserve a chance too."

It is not difficult to understand nor be surprised by the fact that the jury came back with the maximum punishment of twenty years in the Department of Corrections and a $5,000 fine, which is exactly what the prosecutor asked each individual juror for during the voir dire.

Prior to sentencing, attorney for appellant filed a Motion to Quash Indictment and a Motion For Acquittal, or alternatively, Declaration of Mistrial. Both motions were overruled. However, the second motion, for the first time, complained of the error committed during voir dire, the error in the testimony of certain witnesses, the error in the cross-examination of Mrs. Finch and other error to which no trial objections were made.

At time of sentencing, the court asked appellant if he had anything to say, to which he replied:

I don't feel that my motions were in accordance with the law. The reasons I don't feel that way, is because the proper objections by my attorney weren't carried out and taken care of properly.

Also, the fact that he is a non-practicing criminal attorney and that he wasn't aware that objections were to be made at those times. I ask that those objections be made on my behalf and I feel it prejudiced my right for a proper trial and prejudiced my right to appeal.

The court then sentenced appellant to twenty years in the Texas Department of Corrections and assessed a $5,000 fine, and the court denied the state's request that this time be stacked rather than run concurrently with a one-year term appellant was currently serving in the county jail.

## MOTION FOR NEW TRIAL

The appellant filed a pro se Motion for New Trial alleging:

(1) A new trial should be granted in that the defendant was unduly prejudiced by the repeated acts of the prosecution in this matter and these acts were so damaging to the defendant that they made it impossible for the jury to return a fair and impartial judgment. (Appellant then cited primarily the same prosecutorial conduct that has been pointed out in this dissent.)

(2) Ineffective assistance of counsel in that appellant's attorney failed to object to the voir dire, opinion testimony by state's witnesses, improper cross-examination of defense witnesses and other areas of the trial wherein attorney for appellant failed to make proper objections. Appellant advises the court that his appointed attorney had no experience in criminal law, was not briefed in criminal procedure, legal questions, legal proceedings, and although he was a practicing attorney this was his first criminal trial (paraphrased).

The court relieved appellant's trial attorney of his obligations and appointed new counsel to represent appellant in his appeal.

At the hearing on appellant's Motion for New Trial, his newly appointed attorney put the appellant on the stand and the testimony pointed out the incompetence of counsel and the prosecutorial misconduct. Appellant complained of the prosecution's voir dire of the jury, that he advised the jury that appellant was previously convicted of pushing drugs and that he questioned each juror individually regarding the punishment range. The appellant then testified as follows:

Q. Did Mr. Watkins (appellant's trial attorney) tell you why he did not object to the repeated asking of this question?

A. He said he thought it was all right, sir.

Q. He said that was all right, sir?

A. Yes.

Q. Mr. McGee, do you have any other specific reasons why you think that your counsel at the trial stage in this particular case may not have rendered you effective assistance presenting your case to the Judge and Jury?

A. Yes, sir, I do. During the trial, there was some numerous incidents that I thought Mr. Watkins should have objected to. During the testimony of Eric Boyle (sic). All Mr. Boyle testified to was when he had heard what was known in the community and nothing that he—he didn't know nothing that he knew for a fact and Mr. Watkins didn't raise any objection. I thought it would have prejudiced and that was error that he didn't make an objection I thought an objection should have been raised. And during the cross examination of Ms. Hemmingway and Ms. Finch, when the District Attorney injected questions, I thought they were inflammatory and I couldn't receive a fair and impartial jury. If they were objected to, I asked why he didn't object.

Appellant then goes on to testify that he also questioned his attorney during the trial about his cross-examination of the state's main witness, and in particular had asked his trial attorney to question the witness concerning the visibility through

the slot in the door, the darkness of the night, whether or not anyone took photographs of the area that would show how dark the area was and how small the opening in the door was. He then goes on to discuss the reputation testimony given by the other police officers and stated that he did not believe that it was proper and that objection should have been made. He testified that he had asked his attorney to go out and take pictures of the door and pictures of the area and his attorney refused to do so.

The trial prosecutor, Jim James, took the stand to testify that in his opinion Mr. Watkins (appellant's trial attorney) handled himself very well and his pre-trial preparation was excellent. He further testified that the in-court performance was excellent and that he was impressed generally with his conduct during the trial. In regard to the cross-examination of the defense witnesses, Mr. James testified as follows:

I will also state that as far as any questions of certain defense witnesses that I was told by a witness whose name I believe, was Willis, but I am not certain of the name, that Ms. Finch had a three-way telephone and Ms. Finch offered money and a bribe ...

On cross-examination, Mr. James testified as follows:

Q. Did Ms. Willis at any time indicate to you that Mr. McGee had authorized any of those conversations?

A. It is my understanding that Mr. McGee was on the telephone with Ms. Finch.

Q. What leads you to that understanding, sir?

A. That is what I have been told, that there was a three-way phone conversation but Mr. McGee did not make the offer but he was on the phone and that he certainly did not say, "Oh, baby, don't do that."

He further testified that he did not put Ms. Willis on the stand because "[N]o one was going to believe Ms. Finch, and I thought the timing of the case was perfect." Mr.

James also testified that the mysterious Ms. Willis was not subpoenaed.

The parties discussed an affidavit executed by appellant's trial attorney wherein he swore that this was his first criminal trial. However, the affidavit was not made a part of the record; it was discussed with the court at the hearing on the Motion for New Trial but it was not placed into evidence. The record does, however, contain evidence that the trial court was aware that appellant's trial attorney had never previously tried a case in criminal court. When the court denied the Motion for New Trial, it made the following statement: "I also considered that Mr. Watkins did an excellent job, much better than any criminal defense lawyer that comes up here sometimes, and I was very impressed with his ability considering the fact that he didn't try criminal cases."

## INEFFECTIVE ASSISTANCE OF COUNSEL

The Sixth Amendment right to counsel has always been held to be "effective assistance of counsel." The definition of effective assistance of counsel, as well as the standard of review of claims of ineffective assistance of counsel, have been the subject of much controversy and change in both state and federal case law. For purposes of this dissent, it is unnecessary to track its history.

The latest federal guideline is expressed in *Strickland v. Washington,* —— U.S. ——, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Justice O'Connor, writing for the majority, said that a claim of ineffective assistance of counsel must meet a two-part test. *First,* appellant must show that the trial counsel's performance was so deficient, and the error so serious, that counsel was not functioning as the "counsel" as guaranteed by the Sixth Amendment. *Second,* appellant must show that he was prejudiced by the deficient performance of his trial counsel. *Id.* at 2064. This was further defined as requiring a showing that "counsel's errors were so serious as to deprive defendant of a fair trial, a trial

whose result is reliable." It is important to note that the Court went on to say, "[W]e believe that a defendant need not show that counsel's deficient conduct more likely than not altered the outcome in the case." *Strickland*, 104 S.Ct. at 2068. The Court goes to great length to show that in making a determination of an ineffectiveness of counsel claim, the court must consider the totality of the evidence. Moreover, "[A] verdict or conclusion only weakly supported by the record is more likely to have been effected by errors than one with overwhelming record support." *Id.* at 2069.

The Austin Court of Appeals has cited the *Strickland* decision, and in applying the first part of the two-part test, the court used the "prevailing professional norms" to reach an objective standard of reasonableness, that standard being "whether counsel's assistance was reasonable considering all the circumstances." *Hanzelka v. State*, 682 S.W.2d 385 (Tex.App.—Austin 1984, no pet.). However, that case involved the failure of trial counsel to convey to the accused a plea bargain offer. In *Cude v. State*, 588 S.W.2d 895 (Tex.Crim.App.1979), the court held that the trial counsel's failure to object to numerous extraneous and prejudicial matters that occurred during the trial, as well as his failure to object to inadmissible evidence, rendered his assistance ineffective and prevented the accused from obtaining a fair trial. An isolated instance of failure to object to inadmissible evidence does not necessarily render counsel ineffective. *Ewing v. State*, 549 S.W.2d 392 (Tex.Crim.App.1977). However, where there is an almost total failure to object to numerous instances of highly prejudicial argument and testimony, the accused is denied effective assistance of counsel. *Callaway v. State*, 594 S.W.2d 440 (Tex. Crim.App.1980). Further, where trial counsel repeatedly fails to object to inadmissible evidence and objectionable and prejudicial argument, there is no reasonable basis for concluding that his failure was part of a trial strategy. *Id.* at 445. *Long v. State*, 502 S.W.2d 139 (Tex.Crim.App.1973), is another example of repeated improper and highly prejudicial evidence admitted, and jury argument presented, without objection by trial counsel, resulting in reversible error for ineffectiveness of counsel. *See also Weathersby v. State*, 627 S.W.2d 729 (Tex.Crim.App.1982); *Ex Parte Duffy v. State*, 607 S.W.2d 507 (Tex.Crim.App.1980) (en banc), for an evaluation of the Texas Court of Criminal Appeals approach to effective assistance of counsel prior to the federal standard established in *Strickland*.

## SUMMATION

There is no question in my mind that the appellant was systematically and purposely deprived of his constitutional right to a fair trial. This is not your run-of-the-mill case involving trial strategy or "isolated" instances of failure to object. This is a classic example of a prosecutor with the bit in his teeth, the wind in his hair and no one with rein in hand.

The primary concept that recurs in all of the evolution of criminal jurisprudence and the Sixth Amendment "right to counsel" is that a *fair trial* must inevitably be the goal that we seek and the end that we find. The latest Supreme Court opinion in this regard, *Strickland*, holds that if one views the entire record and finds that the accused has not had a *fair trial*, then his counsel cannot be said to be "effective."

Accordingly, I would sustain appellant's grounds of error four and five, reverse the trial court's judgment and remand this cause for a new trial.