Victor Emanuel McGowan v. State














IN THE
TENTH COURT OF APPEALS
 

No. 10-02-065-CR

Â Â Â Â Â VICTOR EMANUEL McGOWAN,
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Appellant
Â Â Â Â Â v.

Â Â Â Â Â THE STATE OF TEXAS,
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Appellee
 

From the 361st District Court
Brazos County, Texas
Trial Court # 28,761-361
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 

MEMORANDUM OPINION
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 

Â Â Â Â Â Â A jury convicted Victor Emanuel McGowan of being a felon in possession of a firearm and
assessed his punishment at twenty yearsâ imprisonment.
Â Â Â Â Â Â McGowanâs attorney has filed an Anders brief. See Anders v. California, 386 U.S. 738, 744,
87 S. Ct. 1396, 1400, 18 L. Ed. 2d 493, 498 (1967). Counsel notified McGowan that he had filed
an Anders brief, sent him a copy of the brief, informed him that he had the right to file a pro se
brief or other response, and told him how to obtain a copy of the record for preparation of a brief
or response. See Sowels v. State, 45 S.W.3d 690, 693 (Tex. App.âWaco 2001, no pet.). 
Although the Clerk of this Court also notified McGowan that he could review the record and file
a brief or response, he has not done so.
POTENTIAL SOURCES OF ERROR
IDENTIFIED BY COUNSEL
Â Â Â Â Â Â McGowanâs counsel has identified six potential sources of error: (1) whether the indictment
is adequate; (2) whether the State presented legally sufficient evidence; (3) whether the trial court
improperly ruled on any of McGowanâs pretrial motions; (4) whether the trial court abused its
discretion by overruling any of McGowanâs evidentiary objections; (5) whether the prosecutor
made improper jury argument at guilt-innocence or punishment; and (6) whether the jury assessed
punishment within the proper range. Counsel then concludes that the appeal presents no issues
of arguable merit. This Court has conducted an independent review of the record and has reached
the same conclusion. See Sowels, 45 S.W.3d at 691-92.
Â Â Â Â Â Â The indictment adequately alleges the constituent elements of the offense. See Tex. Pen.
Code Ann. Â§ 46.04(a)(1) (Vernon 2003); Burleson v. State, 935 S.W.2d 526, 528 (Tex.
App.âWaco 1996, no pet.). Thus, it was sufficient to vest the trial court with jurisdiction. 
Duron v. State, 956 S.W.2d 547, 549-51 (Tex. Crim. App. 1997). Moreover, McGowan made
no pretrial objections to the indictment. Therefore, he forfeited any right to challenge the
indictment on appeal. Tex. Code Crim. Proc. Ann. art. 1.14(b) (Vernon Supp. 2003); Tamez
v. State, 27 S.W.3d 668, 670 (Tex. App.âWaco 2000, pet. refâd).
Â Â Â Â Â Â The State presented three witnesses who testified that they saw McGowan brandishing a
handgun on the occasion in question. McGowan stipulated that he had been previously convicted
of a felony. A parole officer testified that McGowan had been paroled from prison less than five
years before the occasion in question. Thus, the record contains legally sufficient evidence to
support the conviction. See Burleson, 935 S.W.2d at 528 (setting out elements of offense); see
also Taulung v. State, 979 S.W.2d 854, 857 (Tex. App.âWaco 1998, no pet.) (legally sufficiency
issue can be presented in an Anders brief as a âfrivolousâ issue).
Â Â Â Â Â Â The trial court granted McGowanâs only pretrial motion. Thus, he has no basis on which to
complain of any pretrial rulings.
Â Â Â Â Â Â The parties asserted very few objections during the course of the trial. The courtâs rulings
on these objections do not indicate an abuse of discretion.
Â Â Â Â Â Â McGowanâs counsel made no objections to the Stateâs closing argument at guilt-innocence or
at punishment. Thus, McGowan has failed to preserve any error in this regard. Mathis v. State,
67 S.W.3d 918, 926-27 (Tex. Crim. App. 2002).
Â Â Â Â Â Â McGowan pleaded âtrueâ to an enhancement allegation. Therefore, the sentence lies within
the range provided for the offense. See Tex. Pen. Code Ann. Â§Â§ 12.33, 12.42(a)(3) (Vernon
2003); Act of May 29, 1993, 73d Leg., R.S., ch. 900, Â§ 1.01, sec. 46.04(b), 1993 Tex. Gen.
Laws 3586, 3688 (amended 2001) (current version at Tex. Pen. Code Ann. Â§ 46.04(e) (Vernon
2003)).
OTHER POTENTIAL SOURCES OF ERROR
Â Â Â Â Â Â The prosecutor discussed several details of McGowanâs prior felony conviction near the
beginning of her voir dire examination:
We have to prove the Defendant . . . was a felon. Specifically, he was previously
convicted of Possession of a Controlled Substance on August the 27th, 1991; and a
convictionâheâs still convicted, meaning he has not been released from parole within five
years. And Iâll explain that later.

McGowanâs counsel did not object to this statement.
Â Â Â Â Â Â Settled law establishes that âa prosecutor may inform the jury panel of the range of
punishment applicable if the State were to prove a prior conviction for enhancement purposes, but
it may not inform the jury of any of the specific allegations contained in the enhancement
paragraph of a particular defendantâs indictment.â Frausto v. State, 642 S.W.2d 506, 509 (Tex.
Crim. App. [Panel Op.] 1982); accord Holloway v. State, 695 S.W.2d 112, 120 (Tex. App.âFort
Worth 1985), affâd, 751 S.W.2d 866 (Tex. Crim. App. 1988); McGee v. State, 689 S.W.2d 915,
918-19 (Tex. App.âHouston [14th Dist.] 1985, pet. refâd). However, a defendant forfeits the
right to complain of the prosecutorâs conduct in this regard if the defendant fails to object. See
Tex. R. App. P. 33.1(a)(1); McGee, 689 S.W.2d at 919.
Â Â Â Â Â Â At trial, McGowan stipulated that he had been previously convicted as alleged in the
indictment. McGowan was apparently attempting to follow the then-somewhat-recent decision of
the Court of Criminal Appeals in Tamez v. State. 11 S.W.3d 198 (Tex. Crim. App. 2000). 
Despite the stipulation however, the State introduced a copy of the judgment of conviction in
evidence. Tamez was not clear on the issue of whether this is proper. However, the Court of
Criminal Appeals settled this issue two years later in Robles v. State. 85 S.W.3d 211 (Tex. Crim.
App. 2002). In Robles, the Court held that the State may not introduce copies of such judgments
in evidence if the defendant has stipulated to their existence. Id. at 213-14. However, McGowan
did not object to the admission of the judgment in evidence. Thus, this potential issue was not
preserved for appellate review. See Tex. R. App. P. 33.1(a)(1).
Â Â Â Â Â Â Perhaps it could be argued that McGowan received ineffective assistance of counsel with
regard to counselâs failure to object to the voir dire statement noted above or to the admission in
evidence of the judgment. However, because the voir dire issue was an isolated event, because
the law under Tamez regarding the admissibility of the judgment was unclear at the time of trial,
and because âthe record on direct appeal is undeveloped and cannot adequately reflect the motives
behind trial counselâs actions,â we conclude that an ineffective assistance claim would not present
an issue âwhich might arguably support an appeal.â See Rylander v. State, 101 S.W.3d 107, 110-11 (Tex. Crim. App. 2003) (rejecting ineffective assistance claim because âthe record on direct
appeal is undeveloped and cannot adequately reflect the motives behind trial counselâs actionsâ)
(quoting Mallett v. State, 65 S.W.3d 59, 63 (Tex. Crim. App. 2001)); Sowels, 45 S.W.3d at 692
(Anders requires review of record for issues âwhich might arguably support an appealâ); Hardin
v. State, 951 S.W.2d 208, 211-12 (Tex. App.âHouston [14th Dist.] 1997, no pet.) (counselâs
failure to object to Stateâs improper reading of enhancement allegations at guilt-innocence not
ineffective assistance); McGee, 689 S.W.2d at 922 (counselâs failure to object to Stateâs improper
voir dire regarding prior convictions not ineffective assistance).
CONCLUSION
Â Â Â Â Â Â We agree with counsel that McGowanâs appeal presents no issues âwhich might arguably
support an appeal.â Accordingly, we affirm the judgment. Counsel must advise McGowan of our
decision and of his right to file a petition for discretionary review. Sowels, 45 S.W.3d at 694.

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â REX D. DAVIS
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Chief Justice

Before Chief Justice Davis,
Â Â Â Â Â Â Justice Vance, and
Â Â Â Â Â Â Justice Gray
Affirmed
Opinion delivered and filed July 23, 2003
Do not publish
[CR25]



ht:
normal'>IN THE

TENTH COURT OF
APPEALS




 
 
 
 
 
 
 


Â 



No. 10-03-00286-CR

Â 

Gregory Barnett Griggs,

   Appellant

Â v.

Â 

The State of Texas,

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Appellee

Â 

Â 



From the 13th District Court

Navarro County, Texas

Trial Court # 28,466

Â 



DISSENTING Opinion



Â 








Â Â Â Â Â Â Â Â Â  The
majority grasps onto a new statement from Young
and drops its prior discussion of Lankston.Â  Young
v. State, 137 S.W.3d 65 (Tex. Crim. App. 2004); Lankston v. State, 827 S.W.2d 907 (Tex. Crim. App. 1992).Â  If the majority would embrace the entirety of
what the court said in Young, there
is no doubt in my mind that this case would not be reversed.Â  The majority, however, fails to perform a
proper analysis of the manner in which the evidence was admitted and the timing
of the motions made by the defense.

Â Â Â Â Â Â Â Â Â  So,
if the reader will indulge me, only for a little while, in the second portion
of this dissenting opinion I will attempt to explain where the majority
errs.Â  But first I must give the
procedural history for the sake of those that follow after us.

Procedural Prelude

In the past we have withdrawn so few opinions that
no particular problem was created if the opinion was withdrawn by an order
separate from the new opinion being issued.Â 
The problem is that over the past year we have withdrawn numerous
opinions, with and without motions for rehearing, and when on motion for
rehearing, with and without requesting responses.Â  Issuing multiple opinions in the same appeal
creates confusion.Â  A person can hold in
their hands two opinions from this Court, both certified by the clerk as
authentic, which are not the same.Â  Our
past practice has been that the latter normally does not reference the
existence of the earlier opinion that is being withdrawn.

Â Â Â Â Â Â Â Â Â  Our
past practice did not present a problem when the issuance of another opinion in
the same case was rarely done.Â  At least
the problem was manageable.Â  But due to
the greatly increased frequency of the majority issuing multiple opinions, I
thought it was an appropriate time to adopt the procedure utilized by the Texas
Supreme Court; to include the order, and explanation if needed, withdrawing the
prior opinion as the first paragraph of the new opinion.Â  See
e.g., Crown Life Ins. Co. v. Casteel, 22 S.W.3d 378, 381 (Tex. 2000).

Â Â Â Â Â Â Â Â Â  This
is a simple procedure for the convenience of anyone reading the opinions to
understand and easily determine which opinion is the CourtÂs final
opinion.Â  This process also allows a
researcher, interested in the ultimate disposition, to easily track backwards,
if necessary, to see the development of the final opinion.Â  Because the majority refuses to provide that
information in its opinion, I do so in this dissenting opinion.

History of This CourtÂs Opinion

Â Â Â Â Â Â Â Â Â  The
StateÂs Motion for rehearing is denied.Â  The
CourtÂs opinion reversing the trial courtÂs judgment, the judgment, and Chief
Justice GrayÂs dissenting opinion, all dated February 2, 2005, are withdrawn and the CourtÂs opinion, Chief
Justice GrayÂs dissenting opinion, and the judgment of this date are
substituted therefore.

Â Â Â Â Â  With
these comments regarding the history of this appeal, I now proceed to the
substance of my dissenting opinion.

Substantive
Part

Dissenting
Opinion

Â 

Â Â Â Â Â Â Â Â Â  We
must first address whether an issue is properly preserved for our review.Â  In its earlier opinion the majority determined
the issue was preserved and relied upon Langston
as follows:

Under these circumstances, GriggsÂs actions were
sufficient to preserve the complaint about the mistrial ruling.Â  See
Lankston v. State, 827 S.W.2d 907, 909 (Tex. Crim. App. 1992) (Âall a party has to do to
avoid the forfeiture of a complaint on appeal is to let the trial court judge
know what he wants, why he thinks himself entitled to it, and to do so clearly
enough for the judge to understand him at a time when the trial court is in a
proper position to do something about it.Â)

Â 

Griggs
v. State, No. 10-03-00286-CR,
2005 Tex. App. LEXIS 866, *8 (Tex. App.ÂWaco Feb. 2, 2005) (withdrawn,
April
 13, 2005).Â  In my original dissent, I pointed out that
although the majority quoted Lankston,
they then ignored it.

Â Â Â Â Â Â Â Â Â  The
majorityÂs earlier opinion triggered two responses; one predictable, and the
other very rare.Â  In a predictable
response to the opinion, the district attorney filed a motion for
rehearing.Â  The district attorney, in an
effort to refocus the majority on the operative part of Lankston, forcefully argued that the issue was not preserved for
our review because the objection and motion for mistrial were not made Âat a
time when the trial court [was] in a proper position to do something about
it.ÂÂ  The district attorney pointed out
the delay in making the motion for mistrial, which was made long after and
separated by time and events from the acts about which complaint was made.

Â Â Â Â Â Â Â Â Â  And
in a rare move, the second response to the majorityÂs earlier opinion was that the
State Prosecuting Attorney submitted a friend-of-the-court brief in support of
the district attorneyÂs motion for rehearing.Â 
In addition to supporting the district attorneyÂs argument, the State
Prosecuting Attorney also argued that the majorityÂs characterization of the
purpose for requiring a timely objection was not accurate.Â  The State Prosecuting Attorney pointed out
that if

Âthe defendant timely objected when the evidence
was offered, then any error or prejudice to the defendant could have been
avoided by the trial court having sustained the objection and having not
allowed the question to be asked.Â  Or, in
some cases, any prejudicial effect could have been removed by an instruction
from the trial court to disregard the question and/or answer.Â  In either of these situations, the radical,
disruptive result of granting a mistrial and bringing the trial to a premature
conclusion Â would have been avoided.

Â 

State Prosecuting AttorneyÂs Brief as Amicus
Curiae in Support of StateÂs Motion for Rehearing, pg. 2.

Â Â Â Â Â Â Â Â Â  Undaunted,
the majority finds new hope in Young.Â  Young
v. State, 137 S.W.3d 65 (Tex. Crim. App. 2004).Â  The majority now lays down Lankston and picks up Young and hangs its hope of reversing
this conviction on the following discussion in their new opinion:

However, an objection after an event occurs
cannot fulfill the purpose of the objection, which is to prevent the occurrence
of the event.Â  Young v. State, 137 S.W.3d 65, 70 (Tex. Crim. App. 2004).Â  At the conclusion of the two witnessesÂ
testimony, Griggs made a motion for mistrial and requested an instruction.Â  The trial court denied the motion for
mistrial and instructed the jury before the next witness was called.Â  Under these circumstances, GriggsÂs actions
were sufficient to preserve the complaint about the mistrial ruling.Â  See id.Â  (If an instruction could not have enabled the
continuation of the trial by an impartial jury, Âthe only suitable remedy is a
mistrial, and a motion for mistrial is the only essential prerequisite to
presenting the complaint on appeal.Â)

Â 

Majority op. at pg. 6.

Â Â Â Â Â Â Â Â Â  The
majority goes on to the conclusory statement that the Âimpression produced in
the minds of the jurors Â that Griggs might be a serial rapist of elderly women
Â was highly prejudicial and could not be cured by an instruction to
disregard.ÂÂ  Of course, this is the
necessary conclusion of the harm analysis to reverse the conviction.Â  The majority offers the reader no analysis to
support this conclusion.Â  I find no
support for this conclusion in the case law, this record, or the majority
opinion.Â  I will briefly comment on this
analysis but must first focus on preservation of the issue for our review.

Â Â Â Â Â Â Â Â Â  The
majorityÂs analysis of preservation is fundamentally flawed.Â  What the majority has to do is base its
determination of preservation of the issue for our review on the motion for
mistrial.Â  The motion for mistrial was
made after several statements were made during testimony received from multiple
witnesses, and the motion was not made until after the court raised the issue.

Â Â Â Â Â Â Â Â Â  So
before we accept the majorityÂs preservation analysis, maybe we need to do two
things.Â  First, we need to revisit the
record.Â  Second, we need to revisit Young and Lankston.

Â Â Â Â Â Â Â Â Â  Please
forgive the length of the record excerpts but to even begin to place the
insignificance of this evidence in its proper light, a reader is entitled to
see the manner in which the issue arose at trial.Â  The following excerpts will give the reader
the context in which four statements regarding multiple rapes were made.Â  And remember these excerpts are from a
lengthy record of other evidence.Â  Please
pay particular attention to the page numbers from the record on which these
statements were made.

Â Â Â Â Â Â Â Â Â  The
first two statements were by Mr. Gravitt.Â 
Gravitt was a cellmate of Griggs for a period of time.

Q.Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 
What did
you do Â or what did you do with regards to Mr. Nichols, we were talking about
that earlier?

Â 

A.Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 
I just, I
put in a request to speak to Mr. Nichols about Griggs Â 

Â 

Q.Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 
Okay.

Â 

A.Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 
-- and the
statements he gave to me.

Â 

Q.Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 
All
right.Â  Now, what statement did Mr.
Griggs give to you?Â  Amongst other things
tell the jury what Mr. Griggs told you.

Â 

A.Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 
That he
raped some older women, and it went on quite a bit farther than that, you know,
that Â

Â 

Q.Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 
Did he make
a statement to you that he raped an old woman?

Â 

A.Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 
Yes, sir.

Â 

Q.Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 
What else
did he say?

Â 

A.Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 
And that
the cops was trying to get him and they wasnÂt going to get him, they Â they
didnÂt have nothing on him, he was going to win.Â  I mean, be brugged Â he bragged about it
quite regularly.

Â 

Q.Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 
Did he do
this one time or many times?

Â 

A.Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 
Many times.

Â 

Q.Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 
Did or did
not Mr. Griggs say anything about where he had done this, this alleged rape?

Â 

A.Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 
Yes.

Â 

Q.Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 
And what
did he say?

Â 

A.Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 
He said
around where he lived.

Â 

(RR Vol. 10, page 57, line 3 to page 58, line 3)

Â 

Note that no objection, request, or motion for
mistrial was made.Â  Then the following
testimony was elicited.Â  In this passage,
note the District AttorneyÂs effort to avoid the complained of testimony.

Q.Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 
And tell
the jury again what Mr. Griggs told you with respect to, amongst Â leaving out
the other things, about the rape of a lady?

Â 

A.Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 
Mr. Griggs
Â

Â 

Mr. Dunn:Â 
Your Honor, we object.Â  IÂm afraid
that is a coaching, a leading.Â  Your
Honor, I have no way to protect the record in this case, and before this
evidence is submitted, so I can protect the record, IÂd like to take it out of
the presence of the jury.

Â 

Mr. Keathley:Â 
Well, Your Honor, IÂm trying to operate under the perimeters of the
Motion in Limine with respect to what can be admitted and what cannot be.

Â 

The Court:Â 
IÂll tell you what, why donÂt you ask specific questions with respect to
this witness, and weÂll proceed in that fashion.Â  If I perceive that thereÂs a difficulty with
it, then I may take the rest of the testimony out of the presence of the jury,
but I see no need to do it at this time.

Â 

Mr. Keathley:Â 
Okay.Â  Thank you.

Â 

Q.Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 
(By Mr.
Keathley)Â  Did he or did he not admit to
raping an elderly lady to you?

Â 

A.Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 
Yes, sir.

Â 

Q.Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 
What did he
say with regards to just that Â that point?

Â 

A.Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 
Just as I
said in the statement, that he had raped older women Â

Â 

Q.Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 
No,
no.Â  I said Â

Â 

A.Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 
An older
lady and that they Â they was trying to catch him and they didnÂt have nothing
on him, he had it beat, I mean, and it went on and on, and you really got tired
of hearing it.

Â 

(RR Vol. 10, page 59, line 22 to page 61, line 2)Â  Note that no objection, request, or motion
for mistrial was made after the portion of the testimony about which a
complaint is now being made.

Â Â Â Â Â Â Â Â Â  The
next witness was Jason Grant.Â  Officer
Grant also made two references during his testimony that are at issue.

Q.Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 
What did
Mr. Gravitt tell you in respect to the investigation of the rape...?

Â 

A.Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 
He told me
that he was in the cell with Greg Griggs and Greg had told him that he had
raped three elderly Â

Â 

Q.Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 
Hold
on.Â  Mr. Â Mr. Grant, with specifics as
to Mr. Griggs only, what did Mr. Gravitt tell you?

Â 

A.Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 
That Griggs
told him that he had raped three elderly women in his neighborhood and that he
Â he had told him about a towel and a screwdriver and that he was paranoid that
we were trying to get his DNA so we could catch him.

Â 

Â Â Â Â Â Â Â Â Â  Q.Â Â Â Â Â  Okay.Â 
Did he use the actual term neighborhood?

Â 

Â Â Â Â Â Â Â Â Â  A.Â Â Â Â Â  I believe so.

Â 

Â Â Â Â Â Â Â Â Â  Q.Â Â Â Â Â  And did he use the actual term elderly?

Â 

Â Â Â Â Â Â Â Â Â  A.Â Â Â Â Â  Yes.

Â 

Â Â Â Â Â Â Â Â Â  Q.Â Â Â Â Â  What did that lead you to conclude?

Â 

Â Â Â Â Â Â Â Â Â  A.Â Â Â Â Â  Well, it led me to believe that Griggs was
a suspect in this case.

Â 

Â Â Â Â Â Â Â Â Â  Q.Â Â Â Â Â  Did you know where Mr. Griggs lived prior
to this?

Â 

Â Â Â Â Â Â Â Â Â  A.Â Â Â Â Â  Yes.

Â 

Â Â Â Â Â Â Â Â Â  Q.Â Â Â Â Â  And where was that?

Â 

Â Â Â Â Â Â Â Â Â  A.Â Â Â Â Â  On Ficklin.

Â 

Q.Â Â Â Â Â  I
show you StateÂs Exhibit No. 45.Â  Again,
would you point out Mr. GriggsÂ home?

Â 

Â Â Â Â Â Â Â Â Â  A.Â Â Â Â Â  Right here.Â  (Pointing)

Â 

Â Â Â Â Â Â Â Â Â  Q.Â Â Â Â Â  And would you point out [the victimÂs]
home?

Â 

Â Â Â Â Â Â Â Â Â  A.Â Â Â Â Â  Right there.

Â 

Q.Â Â Â Â Â  Just
to refresh the juryÂs memory.Â  How far
away are they in proximate distance?

Â 

Â Â Â Â Â Â Â Â Â  A.Â Â Â Â Â  Maybe half a mile.

Â 

(RR Vol. 10, page 80, line 21 to page 81, line
24)Â  Note that no objection, request, or
motion for mistrial was made.

Â Â Â Â Â Â Â Â Â  Another
witness was then called.Â  But before the
witness was sworn, the jury was excused.Â 
And then the issue was raised by the trial court as to whether a
limiting instruction should be given regarding extraneous offense evidence.

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  The
Court:Â  Mr. Dunn, how do you feel about
that?

Â 

Mr. Dunn:Â 
Your Honor, I think in order to protect the record I need to make a
motion for a mistrial -- 

Â 

(RR Vol. 10, page 95, lines 11-14).

Â Â Â Â Â Â Â Â Â  This
was the first time defense counsel requested a motion for mistrial, and he did
not request an instruction to disregard until page 96, lines 5-7.Â  

Â Â Â Â Â Â Â Â Â  The
trial court gave the following instruction to the jury:

The Court:Â 
Be seated.Â  Members of the jury,
before we resume the testimony in this case thereÂs a brief instruction that I
would like to give you.Â  That instruction
applies to all the evidence in this case and all the witnesses who have
testified, but specifically the last two witnesses who have testified.Â  The instruction of the Court is as
follows:Â  You shall not consider any testimony
or evidence of alleged crimes or acts other than those which may relate to the
alleged assault upon [the victim].Â  That
is the CourtÂs instruction at this time.

Â 

(RR
Vol. 10, page 97, lines 9-18)

Â 

To summarize:

Â 

1.Â Â Â Â Â Â  Witness
uses the term ÂwomenÂ in reference to the victims.Â  No objection, request, or motion.Â  Pg. 57.

Â 

2.Â Â Â Â Â Â  Witness
uses the term ÂwomenÂ in reference to the victims.Â  No objection, request, or motion.Â  Pg. 60.

Â 

3.Â Â Â Â Â Â  Second
witness references Âthree elderly womenÂ as victims.Â  No objection, request, or motion.Â  Pg. 80.

Â 

4.Â Â Â Â Â Â  Second
witness references Âthree elderly womenÂ as victims.Â  No objection, request, or motion.Â  Pg. 81.

Â 

5.Â Â Â Â Â Â  The
trial court raises the issue out of the presence of the jury.Â  Pg. 92.

Â 

Â Â Â Â Â Â Â Â Â  6.Â Â Â Â Â Â  Motion
for mistrial made for the first time.Â 
Pg. 95.

Â 

7.Â Â Â Â Â Â  Request
for instruction to disregard made for the first time.Â  Pg. 96.

Â 

8.Â Â Â Â Â Â  Trial
court gives instruction to disregard.Â 
Pg. 97.

Â 

9.Â Â Â Â Â Â  The
trial court also gave an instruction to disregard in the charge.Â  CR 151.

Â 

With this foundation of what the record shows,
let us revisit Young and Lankston.Â  Remember the majority relies upon Young as the basis that Griggs preserved
this issue for review because he moved for a mistrial 40 pages (and two
witnesses) after the first potentially objectionable evidence was introduced,
and during these 40 pages, four potentially objectionable references were
made.Â  The last potentially objectionable
evidence occurred in the record 14 pages before the motion for mistrial.

Â Â Â Â Â Â Â Â Â  Does
Young speak to this?Â  You bet it does.Â  Does the majority ignore this part of Young?Â 
You bet it does.

Â Â Â Â Â Â Â Â Â  The
Court of Criminal Appeals in Young
anticipated the very problem the majority is exploiting to reverse this
case.Â  The Court of Criminal Appeals stated:

We recognize the potential for abuse of a ruling
allowing a motion for mistrial without a preceding objection or request for
instruction to disregard.Â  If a party
delays [making the] motion for mistrial and by failing to object allows for the
introduction of further objectionable testimony or comments and greater
accumulation of harm, the party could no more rely on this untimely motion for
mistrial than on an untimely objection.Â 
This appellantÂs [YoungÂs] motion for mistrial was not so delayed.

Â 

Id. at 70.

Â Â Â Â Â Â Â Â Â  GriggsÂs
motion for mistrial was delayed.Â  Therefore,
Griggs Âcould no more rely on the untimely motion for mistrial than on an
untimely objection.ÂÂ  See id.Â 
For this reason, I would not reach the issue used by the majority to
reverse this case.Â  Without preservation
of the issue, nothing is presented for review.

Â Â Â Â Â Â Â Â Â  And
by its failure to now cite or discuss Lankston,
the case relied upon in the earlier opinion, the reader may assume the majority
believes the Court of Criminal Appeals has changed the rule in Young.Â 
This assumption would be wrong for two reasons:

1.Â Â Â Â Â Â  The
rule in Lankston and Young are essentially the same rule, and

2.Â Â Â Â Â Â  Young does not mention Lankston and does not overrule it.

We do not have to put Lankston down to pick up Young.Â  These two opinions are not inconsistent and Young does not Âchange the ruleÂ
regarding preservation.Â  Even after Young,

(Âall a party has to do to avoid the forfeiture
of a complaint on appeal is to let the trial court judge know what he wants,
why he thinks himself entitled to it, and to do so clearly enough for the judge
to understand him at a time when the trial court is in a proper position to do
something about it.Â).

Â 

Griggs
v. State, No. 10-03-00286-CR,
2005 Tex. App. LEXIS 866, *8 (Tex. App.ÂWaco Feb. 2, 2005) (withdrawn,
April
 13, 2005).

Â Â Â Â Â Â Â Â Â  What
the majorityÂs holding supports, is that if the trial court had done nothing,
there would be no preservation; but, because the trial court on its own raised
the issue, there is reversible error.Â  Am
I the only one confused by that?

Â Â Â Â Â Â Â Â Â  But
let us assume for a moment that the issue was preserved for review.Â  We must then ask whether the comments were
such that an instruction to disregard would have cured the prejudice, if
any.Â  Young
at 71.Â  Without unnecessarily lengthening
this dissenting opinion, when I consider the same factors and surrounding
circumstances as the Court of Criminal Appeals did in Young, I reach the same conclusion in this case that they did in Young.Â 
Id. at 71-72.Â 
A timely instruction could have cured the prejudicial effect, if any.

Â Â Â Â Â Â Â Â Â  This
is particularly true if the request and instruction had been made after the
first potentially objectionable comment, or even the second.Â  Indeed, I believe the instruction could
remove the prejudicial effect, if any, even when given, as it was, after the
testimony of the two witnesses and again in the charge.

Â Â Â Â Â Â Â Â Â  The
majority makes no real analysis of whether this is the type comment, in the
context of this entire trial, for which an instruction could have been
effective in removing the prejudicial effect, if any, so that the defendant
could still receive a fair trial.Â  The
majority seems to assume the jury would have been more interested in convicting
someone, anyone, for the rape of multiple women, rather than the actual perpetrator.Â  Balderdash.Â 
For obvious reasons, the jury would have no interest in convicting
anyone other than the actual perpetrator, especially if the concern was a
serial criminal.Â  Conviction of anyone
else would not stop future crime by the actual perpetrator and would cause the investigation
to find the actual perpetrator to stop, thus leaving the actual perpetrator
free to roam the streets.

Conclusion

Â Â Â Â Â Â Â Â Â  In
this case, a conscientious trial court judge made sure the defendant obtained a
fair trial.Â  As a result of the trial
courtÂs action, including raising the issue and instructing the jury, a fair
trial, possibly not a perfect trial, was obtained.Â  The trial court weighed all the facts and
circumstances regarding whether a mistrial was warranted, denied the late
request, and gave an instruction.Â  If the
majority was present for the entire trial, maybe they would come to the same
conclusion the trial court did, that a mistrial was unnecessary.Â  

Â Â Â Â Â Â Â Â Â  I
was not there.Â  On this record, the issue was not preserved, and
the trial court certainly did not abuse its discretion in denying the motion
for mistrial.

Â Â Â Â Â Â Â Â Â  I
dissent.

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  TOM
GRAY

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Chief
Justice

Â 

Dissenting
opinion delivered and filed April 13, 2005

Publish