

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

## No. 06-08-00060-CR

_____

ROY LEE FOX, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 258th Judicial District Court
Trinity County, Texas
Trial Court No. 9170

Before Morriss, C.J., Carter and Moseley, JJ.
Memorandum Opinion by Justice Carter

MEMORANDUM OPINION

After a jury found Roy Lee Fox guilty of sexual assault, the trial judge sentenced him to life imprisonment.[1]  On appeal, Fox argues that the evidence was factually insufficient to support the jury's verdict.  Fox also complains that he was denied effective assistance of trial counsel in several respects.[2]

First, we find the evidence factually sufficient to support the jury's verdict of guilt.  We also determine that Fox has not shown that he received ineffective assistance of counsel.  We affirm the trial court's judgment.

## I. Factual Background

Patricia Williamson learned that her estranged husband was coming back into town.  After having three to four beers at her sister's house, she put on a new orange sweater and went to Bell's Camp Marina Bar in Trinity, Texas, where her husband was known to hang out.  Williamson ordered a beer, determined her husband was not there, and asked her bartender friend if she could borrow his phone.  She intended to call the bartender's mother, Jean Dixon, and ask to stay the night with her, but the bar did not have a telephone.  Williamson left the bar and was approached by Fox while getting into her car.  Apparently overhearing her conversation with the bartender, Fox offered Williamson the use of his phone and invited to take her to breakfast.  She then used Fox's cell phone

---

[1]Fox's sentence was enhanced due to a previous conviction of aggravated rape.

[2]This case has been transferred to this Court as part of the Texas Supreme Court's docket equalization program.

to call Dixon. Williamson climbed into Fox's truck, and they headed to Riverside, Texas, to eat at Papa Keith's Restaurant. After discovering it was closed, they went back to Trinity to Joseph's Restaurant, which Williamson then remembered was also closed.

Fox then turned down a dirt road. Williamson told him she needed to get back to her vehicle. Fox replied, "[W]e should fool around a little bit." Williamson said, "I don't do that," but offered to swap numbers so they could go out on a date. Fox simply affirmed that "he was going to get him some of that." When Williamson said she would just get out and went to open the door of the truck, Fox grabbed her hair and hit her in the head with such force that it "rang [her] bell." After the blow, Williamson was in shock. Fox backed his truck into a clearing while repeating, "I'm going to get me some of that." Unsuccessfully, Williamson tried to talk him into letting her go.

Williamson testified that Fox forced her to perform oral sex on him. During oral sex, Williamson feigned shoulder dislocation, began screaming, and said that she needed to get outside to hit her shoulder against the truck so it could snap into place. When Fox let her out of the truck, she ran through a pasture trying to escape. Fox caught up to Williamson and shoved her down with pressure that took the breath out of her and scared her. Fox got on top of Williamson, pushed his knee on her chest, put one hand on her throat and another on the top of her head, and said, "[W]e can do this the hard way or the easy way." Fox stood her up, took her back to the truck, slammed her against the door, and choked her. Then, he removed and neatly folded his pants and shirt, and removed her panties and pants. Fox pushed Williamson into the driver's side of the truck while

3

pulling her hair at all times. Fox got in, got on top of Williamson, and had sex with her. He burned Williamson on the forehead and arm with a cigarette. He forced her to wrap her legs around him and threatened to have anal intercourse with her if she did not satisfy him. After intercourse, he forced her to perform oral sex on him again. After Williamson's shoulder actually dislocated, Fox allowed her to sit up and get dressed. Williamson begged Fox to take her back to her mother's house. Fox told her that, if she told anyone that it was a fight, he would hurt her because he knew where she lived. As soon as Williamson arrived, she burst into her mother's house and announced that she had been raped.

Officer Steven Casper was dispatched to the mother's home and found Williamson crying pretty hard on the couch in the fetal position. He saw red markings, which he testified were consistent with choking, around Williamson's neck. Her clothing was dirty, and it looked like her sweater was pulled as if she was in some sort of struggle. Casper transported Williamson to Trinity Hospital and was met by Officer James Gratz and his wife. Gratz observed that Williamson was "extremely emotional and crying," and her face and lips were swollen. Because Trinity Hospital did not have a sexual assault nurse examiner (SANE), Gratz and his wife transported Williamson to Memorial Hermann Hospital in The Woodlands. SANE nurse Nicole Triggs conducted the four- to five-hour examination.

Nurse Triggs reported that Williamson was quiet, anxious, had minimal eye contact, was nauseated, and was crying. She noticed Williamson had bruising on her right upper lip and lower

4

left lip, which she testified could be consistent with a blow to the face. Williamson had abrasions on her left hip, upper left hip, left shoulder back area, lower right arm, forehead, and right back area. The abrasions on her upper arm and forehead were consistent with cigarette burns. Triggs determined Williamson had been strangled at maximum force after viewing an abrasion on Williamson's neck and noticing that she was coughing, had difficulty breathing and swallowing, and exhibited a hoarse, raspy voice. The genital examination revealed bruises at Williamson's hymen and urethral meatus, two tears at the posterior fourchette, and redness in the cervix caused by acute or recent trauma. Triggs concluded that Williamson had suffered physical and genital trauma which was consistent with sexual assault rather than typical consensual sex.

## II.    Factually Sufficient Evidence Supports the Jury's Verdict

### A.    Standard of Review

This Court has the ability to second-guess the jury to a limited degree when reviewing factual sufficiency. *Roberts v. State*, 220 S.W.3d 521, 524 (Tex. Crim. App. 2007). We view the evidence in a neutral light and determine whether the proof of guilt is obviously weak as to undermine confidence in the verdict, or, if taken alone, is greatly outweighed by contrary proof so as to be clearly wrong and unjust. *Lancon v. State*, 253 S.W.3d 699, 705 (Tex. Crim. App. 2008); *Roberts*, 220 S.W.3d at 524; *Johnson v. State*, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000); *Cain v. State*, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997); *Harris v. State*, 133 S.W.3d 760, 764 (Tex. App.—Texarkana 2004, pet. ref'd).

5

However, since factual sufficiency is an issue of fact, we are not free to reweigh the evidence and set aside a jury verdict merely because we feel a different result is more reasonable. *Clewis v. State*, 922 S.W.2d 126, 135 (Tex. Crim. App. 1996). Instead, we give due deference to the jury's determinations and will find the evidence factually insufficient only when necessary to prevent manifest injustice. *Marshall v. State*, 210 S.W.3d 618, 625 (Tex. Crim. App. 2006); *Johnson*, 23 S.W.3d at 8–9 & 12; *Clewis*, 922 S.W.2d at 133 & 135. A high degree of skepticism about the verdict is required before reversal can occur. *Roberts*, 220 S.W.3d at 524; *Martin v. State*, 252 S.W.3d 809, 820 (Tex. App.—Texarkana 2008, pet. granted).

**B.     Analysis**

Instead of addressing the factual sufficiency of the evidence presented above, Fox restates his defensive theory, consensual sex, in an attempt to convince us that the evidence was insufficient. The facts supporting this theory are: Gratz finally located Fox's sister after trying for six weeks and asked her to have Fox call Gratz. When Fox called, he said that, if Gratz wanted to speak with him "regarding having sex with a women at -- from Bell's Camp, that it was a voluntary sex and that he didn't do anything . . . inappropriate with her." Fox also stated that "when he tried to have anal intercourse . . . she told him she was going to say he raped her." Fox argues that this admission, combined with the fact that Fox dropped Williamson at her mother's house, supports his theory that sex with Williamson was consensual.

6

In addition, Fox points out that Williamson had been drinking and left the bar with a man she did not know. Fox also discusses what he considers to be inconsistencies that he argues should lead this Court to a high degree of skepticism of the jury's verdict. He directs us to Williamson's testimony that she went to the bar to look for her husband, who was violent and had beaten her in the past, but she never told the bartender or Gratz that fact. He states that, while Williamson testified Fox choked her with both hands, with what Triggs described as maximum force, there was only a .5 centimeter bruise on Williamson's neck. Fox attempts to de-emphasize Triggs' conclusions that the genital trauma suffered was not *typical* of consensual sex and *could* be consistent with sexual assault by stating Triggs could not testify whether the bruises or abrasions she observed were recent. Without mentioning that Triggs found acute trauma on the cervix, Fox states Triggs found no acute trauma on the vagina. Although her clothes were dirty, stretched, and burned, Fox argues that the clothes were not torn or ripped. Finally, Fox directs the Court to an alleged lack of evidence by stating that there were no photographs of Williamson's bruises and her panties were never recovered. According to Fox, the evidence of consensual sex greatly outweighed proof of his guilt such that the jury's verdict was clearly wrong and unjust.

We do not agree. The testimony elicited from Williamson, Casper, Gratz, and Triggs described above is factually sufficient to support the jury's finding that the encounter with Fox was not consensual. The jury was free to consider and believe Williamson's recollection of the incident, Casper's and Gratz's testimony about Williamson's demeanor and appearance, and Triggs' description

7

and findings from her observation and physical examination of Gratz.  Fox's first point of error is overruled.

### III.  Fox Failed to Prove That Ineffective Assistance of Counsel Damaged His Defense

#### A.  Standard of Review

From the record received by this Court, Fox bears the burden of proving that counsel was ineffective by a preponderance of the evidence. *See Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005) (any allegation of ineffectiveness must be firmly founded in record); *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999); *Cannon v. State*, 668 S.W.2d 401, 403 (Tex. Crim. App. 1984).  We apply the two-pronged *Strickland* test handed down by the United States Supreme Court to determine whether Fox received ineffective assistance of counsel.  *Strickland v. Washington*, 466 U.S. 668 (1984).  Failure to satisfy either prong of the *Strickland* test is fatal.  *Id.* at 697; *Ex parte Martinez*, 195 S.W.3d 713, 730 (Tex. Crim. App. 2006).  Thus, we  need not examine both *Strickland* prongs if one cannot be met.  *Strickland*, 466 U.S. at 697.

Fox must first show counsel's performance fell below an objective standard of reasonableness when considering prevailing professional norms.  *Id.* at 687–68.  Our review of counsel's performance is highly deferential, and there is a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance.  *Id.* at 689; *Tong v. State*, 25 S.W.3d 707, 712 (Tex. Crim. App. 2000).  Therefore, we will not second-guess through hindsight the strategy of counsel at trial.  *Blott v. State*, 588 S.W.2d 588, 592 (Tex. Crim. App. 1979); *Hall v. State*, 161

8

S.W.3d 142, 152 (Tex. App.—Texarkana 2005, pet. ref'd). Where the record is silent as to why counsel failed to make an objection or take certain actions, we will assume it was due to any strategic motivation that can be imagined, and the appellant will have failed to rebut the presumption that trial counsel's actions were in some way reasonable.[3] *Mata v. State*, 226 S.W.3d 425, 431 (Tex. Crim. App. 2007); *Garcia v. State*, 57 S.W.3d 436, 441 (Tex. Crim. App. 2001); *Fox v. State*, 175 S.W.3d 475, 485–86 (Tex. App.—Texarkana 2005, pet. ref'd). In other words, we will not conclude that the challenged conduct is deficient unless it was so outrageous that no competent attorney would have engaged in it. *Thompson*, 9 S.W.3d 808; *Fox*, 175 S.W.3d at 485–86.

Next, it is not enough for Fox to show that the errors had some conceivable effect on the outcome of the proceeding. *Strickland*, 466 U.S. at 693. To meet the second prong of the *Strickland* test, Fox must show that the deficient performance damaged his defense such that there is a reasonable probability that the result of the trial would have been different. *Id.*; *Tong*, 25 S.W.3d at 712. We evaluate this factor while taking into consideration the totality of representation and the particular circumstances of this case. *Thompson*, 9 S.W.3d at 813; *Ex parte Felton*, 815 S.W.2d 733, 735 (Tex. Crim. App. 1991). Using these guiding principles, we will examine Fox's claims of ineffective assistance of counsel.

---

[3]Even though a motion for new trial was filed, it did not raise ineffective assistance of counsel and no hearing was conducted on the motion. Consequently, the record is silent concerning the rationale for trial counsel's actions during trial.

**B.      Failure to Object to Evidence That Fox Retained an Attorney**

Gratz testified that he received a call from an attorney hired by Fox.  Fox argues that counsel's failure to object to this testimony fell below the range of reasonable professional assistance. Article 38.38 of the Texas Code of Criminal Procedure states:

> Evidence that a person has contacted or retained an attorney is not admissible on the issue of whether the person committed a criminal offense.  In a criminal case, neither the judge nor the attorney representing the state may comment on the fact that the defendant has contacted or retained an attorney in the case.

TEX. CODE CRIM. PROC. ANN. art. 38.38 (Vernon 2005).

We conclude that trial counsel may have failed to object to this inadmissible evidence for strategic reasons.  Fox told Gratz that he would meet him at the police station on January 1, 2007, but failed to do so.  Fox called and rescheduled for January 2, failed to show up, called to reschedule the meeting for January 3, and again failed to meet with Gratz.  This testimony was in front of the jury before Gratz stated he received a call from Fox's counsel on January 4, that he was assured Fox would contact him on the 5th, but that Gratz never heard from either one again.  In Gratz's cross-examination, the strategy for failing to object was revealed:

> Q.      If I'm a police officer, and I call you up on the phone and say, I want to talk to you about a rape.
> Tell the ladies and gentlemen of the jury what's the first thing you're going to do.
>
> A.      Call an attorney.
>
> Q.      Absolutely.  Why is that?

10

A.      Because I know how the police operate.

Q.      They can trick people.  They can cajole them into saying things that can be used, when necessarily taken out of context, it wouldn't be any big deal; but the way it's used, it hurts them, right?

A.      That's correct.  It could be.

. . . .

Q.      . . . So the fact that he called David Ryan -- now, you got to remember the context that this is the very first part of the year.  Nobody's -- not many attorneys would be working on December 31st or January 1st, right?

A.      Not that I know of.

Q.      . . . So, the fact that you don't hear from an attorney until, what, January the 4th, that shouldn't come as any surprise to you, should it?

A.      No, sir, that didn't.

. . . .

Q.      And nobody should take any negative inference from the fact that he hired a lawyer, didn't want to talk to you without a lawyer, and Mr. Ryan did or didn't get ahold of you quick enough.  That's not my client's fault, is it?

A.      No, sir.

It is possible that counsel wanted the jury to determine that Fox's delay in meeting with Gratz was due to his need to find an attorney so that he would not be tricked by the police, and was not due to fear because of possible knowledge of guilt.  Without testimony that it may have been difficult to hire an attorney around the holiday season, Fox's counsel may have had a hard time explaining Fox's broken promises to meet with Gratz.

11

Since it is conceivable that counsel used this strategy, we will not second-guess it through hindsight. Further, Fox failed to brief or otherwise demonstrate how this error would have resulted in a different outcome, especially in light of evidence that was factually sufficient to support the verdict. Because Fox failed to meet either prong of the *Strickland* test, this point of error is overruled.

## C.     Extraneous Offense Objection

Next, Fox complains that extraneous offense evidence was introduced through testimony by Williamson that Fox was "very controlling, very -- very instructive, very controlling. He had done this. He knew what he was doing." Fox's counsel objected to the statement, and an instruction to disregard was given. Now, Fox complains of his counsel's failure to ask for a mistrial.

Here, counsel protected Fox's rights by objecting and obtaining an instruction from the trial court that the jury was to "disregard the last statement made by the witness." This was accomplished without mentioning an extraneous offense or a prior bad act. Counsel obtained the desired relief without calling to the jury's attention the specific rationale -- that it might be interpreted that the witness was insinuating that Fox had sexually assaulted others. "The asking of an improper question will seldom call for a mistrial, because, in most cases, any harm can be cured by an instruction to disregard." *Ladd v. State*, 3 S.W.3d 547, 567 (Tex. Crim. App. 1999) (quoting *Hernandez v. State*, 805 S.W.2d 409 (Tex. Crim. App. 1990)). A mistrial is required only when the improper question

is clearly prejudicial to the defendant and is of such character as to suggest the impossibility of withdrawing the impression produced on the minds of the jurors. *Id.*

Fox focuses generally on extraneous offense caselaw, but does not establish how Williamson's specific testimony was clearly prejudicial. The statement "[h]e had done this" could simply mean that Fox instructed Williamson in a controlling manner. The statement that Fox "knew what he was doing" could also just mean that he was in control. We do not think these statements clearly establish an introduction of another crime, wrong, or act as contemplated under Rule 404 of the Texas Rules of Evidence. Based on this ambiguous testimony, it is highly unlikely that a mistrial would have been granted. *See* TEX. R. EVID. 404. Therefore, counsel's action in objecting and obtaining an instruction to disregard the evidence was not deficient performance even though a motion for mistrial was not requested. This point of error is overruled.

### D.     State's Punishment Reference

In its opening statement, the State argued, "I think after you've heard all of this evidence, you'll agree with me that this -- this jury will be convinced beyond a reasonable doubt and that this man needs to spend the rest of -- as long as he can in the penitentiary." During closing statement at the guilt/innocence phase, the State contended Fox "doesn't need to be on the streets. He needs to spend the rest of his life in the penitentiary."

It is proper for the prosecution to make a plea for law enforcement. *Jackson v. State*, 17 S.W.3d 664, 673 (Tex. Crim. App. 2000). For this reason, not every reference to punishment at the

13

guilt/innocence stage is improper. *Wright v. State*, 178 S.W.3d 905, 930 (Tex. App.—Houston [14th Dist.] 2005, pet. ref'd). The argument that the jury should get the defendant off the streets has been held to be a proper plea for law enforcement. *Smith v. State*, 114 S.W.3d 66, 72 (Tex. App.—Eastland 2003, pet. ref'd). Where, as here, the State's argument does not encourage the jury to ignore its duties to decide guilt or innocence or suggest that punishment is the only real issue, the punishment reference is not necessarily improper. *Wright*, 178 S.W.3d at 930; *Francis v. State*, No. 02-05-00046-CR, 2006 WL 2034280, at *2 (Tex. App.—Fort Worth July 20, 2006, no pet.) (mem. op., not designated for publication).

More importantly, declining to object to a portion of the State's argument is an inherently tactical decision based on the way the trial is unfolding and the trial strategy employed. *Taylor v. State*, 947 S.W.2d 698, 704 (Tex. App.—Fort Worth 1997, pet. ref'd). Counsel could have made a tactical decision not to draw attention to, or re-enforce the prosecutor's argument in front of the jury. Absent a record stating the reasons for counsel's failure to object, we will not second-guess counsel through hindsight.

Further, Fox failed to brief or otherwise demonstrate how counsel's failure to object to these statements would have resulted in a different outcome. This point of error is overruled.

E.      **Failure to Object to State's Use of the Word "Predator"**

During closing argument, the State referred to Fox as a "predator" six times. Fox contends his counsel's failure to object to the use of this term constituted ineffective assistance of counsel.

14

There are four proper areas for jury argument: 1) summation of the evidence presented at trial; 2) reasonable deduction drawn from the evidence; 3) answer to the opposing counsel's argument; and 4) a plea for law enforcement. *Jackson*, 17 S.W.3d at 673. We have previously explained that the use of the term "predator" can be interpreted as a description or deduction based on the evidence. *Smith v. State*, No. 06-05-00148-CR, 2006 WL 3246487, at *3 (Tex. App.—Texarkana Nov. 10, 2006, no pet.) (mem. op., not designated for publication); *see also Hines v. State*, 144 S.W.3d 90, 95 (Tex. App.—Fort Worth 2004, no pet.) (court decided failure to object to use of term "predator" during closing argument not ineffective assistance of counsel because failure to object could have been part of strategy not to draw attention to term).

While we do not condone the use of this term and even assuming this argument was improper, Fox has failed to demonstrate how the alleged deficient performance damaged his defense such that there was a reasonable probability that the jury's verdict would have been different. This point of error is overruled.

### F.       Failure to Object to Prosecutor's Personal Opinion

Fox asserts that he was denied effective assistance of counsel when there was a failure to object to the prosecutor's statements projecting his personal opinion that Fox was guilty. The following remarks were made to the jury in closing argument:

- Our evidence isn't perfect, but I don't see how any of you could have any reasonable doubt.
- I don't think any of you have any doubt.
- He needs to spend the rest of his life in the penitentiary.

15

- And I think the only possible verdict you can return is one of guilt.
- I don't think there's any reasonable doubt on the essential elements in this case.
- And if you don't find this person guilty, then I don't think justice will have been done.

The prosecutor may tell a jury that a conviction is expected based on the evidence. *Murray v. State*, 861 S.W.2d 47, 54 (Tex. App.—Texarkana 1993, pet. ref'd). We believe these statements amount to a plea for law enforcement based on a reasonable deduction from the evidence rather than the prosecutor's personal opinion on guilt. *See McGee v. State*, 689 S.W.2d 915, 918 & 920–21 (Tex. App.—Houston [14th Dist.] 1985, pet. ref'd) (Prosecution's statement, "I will tell you something. If we can't get a conviction in that type of situation, we might as well forget trying to get the drug pushers convicted in Galveston," was a summation of the evidence and a proper plea for law enforcement.).

Nevertheless, in *McGee*, failure to object to closing argument when the prosecutor offered a personal opinion of the defendant's guilt by stating, "You know as well as I do, in your hearts, that Don Carols McGee is guilty," was held not to constitute ineffective assistance of counsel. 689 S.W.2d at 919–21; *see Goodspeed v. State*, 167 S.W.3d 899, 904 (Tex. App.—Texarkana 2005, no pet.); *see also Dockery v. State*, No. 01-93-00956-CR, 1996 WL 32871, at *3 (Tex. App.—Houston [1st Dist.] Jan. 25, 1996, no pet.) (not designated for publication) (Even though statement that "I prosecute cases that we believe the defendant is guilty" was error, it was an isolated incident and did not constitute ineffective assistance of counsel.).

16

As with the other points of error, Fox failed to demonstrate that failure to object was not part of his counsel's strategy. Counsel may have wanted to mitigate attention to the prosecutor's comments or possibly feared the risk an overruled objection from which the jury might improperly infer the judge's agreement with the prosecution. Fox also failed to demonstrate his defense was prejudiced in such a manner that the jury would have rendered a not guilty verdict absent the State's comments. This point of error is overruled.

**G.** **Failure to Object to the State's Remarks Regarding Fox's Attorney**

Next, Fox contends that the following comments made by the State during closing were improper:

- Davis is a good lawyer. He did a good job in this case. He didn't have much to work with, but he did as good as he could.
- I'd like for you to not get sidetracked because he's [Fox's counsel] good at that.
- Well, I may change my opinion of the lawyer. I thought he was a good lawyer. That insults my intelligence, and I hope that it insults your intelligence, every one of you.
- That insults my intelligence. They have to come up with something, though.

The State has a right to respond to arguments made by defense counsel. A review of the record clarifies that these statements were made to respond to Fox's consent defense. Moreover, even if these statements can be read as sidebar remarks, we do not think the absence of these statements would have caused a different result, and we will not speculate on whether defense counsel's inaction was contrary to any possible trial strategy. *Thomas v. State*, 693 S.W.2d 7, 11

17

(Tex. App.—Houston [14th Dist.] 1985, pet. ref'd) (failure to object to sidebar remarks not ineffective assistance).

**H.     Failure to Object to Use of Pen Packet During Punishment Phase**

Pen packets are admissible to show a defendant's prior criminal record if they are properly authenticated. *Cuddy v. State*, 107 S.W.3d 92, 96 (Tex. App.—Texarkana 2003, no pet.). Certification by "the record clerk of the Texas Department of Criminal Justice, Institutional Division . . . constitutes proper authentication of the copies of the judgment and sentence found in a pen packet." *Id.*; *see Reed v. State*, 811 S.W.2d 582, 586 (Tex. Crim. App. 1991).

Fox asserts that his counsel's failure to object to the authentication of the pen packet used to enhance his sentence amounted to ineffective assistance of counsel. The argument is that certified copies of judgments for various cause numbers were attached, but the cause number for the aggravated rape conviction used in the enhancement, number 340190,[4] was not included in the certification. When the State sought to admit the pen packet, Fox's defense counsel objected to it as hearsay, but did not object to the authentication of the pen packet.[5]

The indictment alleged that Fox had been previously convicted in cause number 0340190 in the 185th Judicial District Court of Harris County, Texas, of aggravated rape. During the

---

[4]For court record-keeping purposes, cause numbers 0340190 and 340190 are mathematically the same. This variance is not complained of on appeal.

[5]This was not an improper objection. If the record was actually not authenticated, then it would have been subject to a hearsay objection. But we agree counsel should make a more specific objection to preserve the issue of authentication.

punishment trial, counsel for Fox acknowledged that he had previously been furnished a copy of the pen packet. The pen packet contained a copy of the conviction for aggravated rape in cause number 340190 from the 185th Judicial District Court of Harris County, Texas.

The pen packet was certified by an affidavit of record clerk Larry LeFlore, who was "employed as the Chairman of Classification and Records for the Texas Department of Criminal Justice - Correctional Institutions Division." LeFlore stated, "I do hereby certify that the attached information provided on inmate FOX, ROY LEE, TDCJ/BPP# 331714 Cause # 340100, 16989, 12845, 12514 are true and correct copies of the original records now on file in my office maintained in the regular course of business." LeFlore then attached records to his affidavit that he intended to authenticate. There was no cause number 340100. Instead, an attached judgment for cause number 340190, the aggravated rape cause, was included. It appears from the record that LeFlore simply made a clerical error in stating that cause number 340100 was attached when in reality cause number 340190 was the attached judgment. We do not find counsel's conduct deficient. Even if a variance existed between the cause number alleged in the enhancement count and that on the judgment, reversal would be required only if Fox could show "prejudicial surprise." *Robinson v. State*, 739 S.W.2d 795, 800 (Tex. Crim. App. 1987). Here, there was no variance between the enhancement allegation and the copy of the judgment of conviction in cause number 340190. The proper judgment of the prior conviction on Fox was contained in the pen packet that was certified by the

19

Department of Criminal Justice. We do not believe it is incumbent on counsel to object to a matter that clearly appears to be no more than a typographical error.

Also, at the punishment phase in front of the trial court, Joseph Willis, a certified investigator with the special prosecution unit, testified that the fingerprints he took of Fox in court matched the fingerprint card attached to the pen packet in question. He also testified that the records showed that Fox was convicted of aggravated rape in Harris County in cause number 340190 and received a twenty-five-year sentence on February 9, 1982.

This punishment trial was presented to the trial court, not a jury. Even if Fox had objected to the typographical error and even if the trial court had sustained the objection, the State likely could have been granted an opportunity to obtain a correction of this clerical error. On these facts, we cannot say that counsel's failure to object specifically to the authentication of the pen packet constituted ineffective assistance of counsel. *See Hahn v. State*, No. 05-06-00366-CR, 2007 WL 530007, at *1 (Tex. App.—Dallas Feb. 22, 2007, pet. ref'd) (not designated for publication) (when other evidence of previous conviction presented, failure to object to admissibility of pen packet during punishment hearing not ineffective assistance of counsel). This point of error is overruled.

**I.      Cumulative Error**

Finally, Fox argues that the cumulative effect of the foregoing matters resulted in an unfair trial. We are to judge the totality of the representation and the particular circumstances of each case in evaluating the effectiveness of counsel. *Thompson*, 9 S.W.3d at 813. In this case, we have

reviewed the entire record and find that, among other things, counsel for Fox filed a motion to allow Fox to testify without being impeached, cited the trial court proper authority, obtained rulings from the trial court, requested and was allowed  a pretrial hearing on the chain of custody of evidence, presented a thorough voir dire examination of the jury panel, successfully challenged several jurors for cause, cross-examined the witnesses, objected to many of the State's exhibits, including the medical history and the SANE records, presented proper jury arguments, and essentially acted in a professional and competent manner.  We do not find the overall actions of counsel to be deficient.

Because we find the evidence factually sufficient to support the jury's verdict of guilt and determine that Fox had effective assistance of counsel, we affirm the judgment of the trial court.



Jack Carter
Justice

Date Submitted:      November 10, 2008
Date Decided:        November 13, 2008

Do Not Publish

21